**Merry A. KURTZ, as parent and natural guardian of David Lee Gann, a minor, Plaintiff,**

v.

**UNIFIED SCHOOL DISTRICT NO. 308, Defendant.**

**No. 01–1122–JTM.**

United States District Court, D. Kansas.

April 16, 2002.

Timothy J. King, Speth & King, Tracey S. Lough, Law Office of Tracey S. Lough, Wichita, KS, for Plaintiff.

Joel W. Riggs, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Kevin M. McMaster, McDonald, Tinker, Skaer, Quinn & Herrington, P.A., Wichita, KS, for Defendant.

*MEMORANDUM AND ORDER*

MARTEN, District Judge.

This matter comes before the court on defendant's motion for summary judgment. The motion is fully briefed and ripe for determination. Plaintiff brings this tort action seeking non-economic damages based on defendant's alleged negligent retention and supervision of Sandra Zolman, a speech and language para-professional.

Plaintiff's allegations are based on sexual conduct engaged in by Zolman and David Gann during the 1999–2000 school year. For the reasons set forth below, the court grants defendant's motion for summary judgment.

## I. Factual Findings

Merry Kurtz is the mother and natural guardian of David Lee Gann. During the 1998–99 school year, David was a 12–year-old, 5th grader at Faris Elementary School in Hutchinson, Kansas. Faris Elementary is part of USD 308. At that time, Gann was receiving special education services because of a learning disability. The special education services for both speech and learning disabilities shared a room at the elementary school. Pamela Hart was a speech pathologist for USD 308. During the 1998–99 school year, she provided services for students at both Faris and Morgan elementary schools in Hutchinson. Sandra Zolman was a para-professional for USD 308 and worked for Ms. Hart during the 1998–99 school year. Both Hart and Zolman became acquainted with David Gann during the 1998–99 school year.

Ms. Zolman initiated a lunch time art group for kids she felt needed positive stimulus to assist them in the school environment. At the end of the 1998–99 school year, Zolman introduced her 11–year–old son, Austin, to David Gann. Austin attended a different school and was not previously acquainted with David. David and Austin became friends and played together frequently during the summer of 1999. David would often spend the night or a weekend with the Zolman family. Kurtz and Zolman also became better acquainted. Neither Kurtz, Zolman, David, nor Austin had any involvement with USD 308 during the summer of 1999.

When school resumed in August 1999, David enrolled in the 6th grade at Lincoln grade school. Ms. Hart and Ms. Zolman continued to work together at both Faris and Morgan schools. David and Austin remained friends. On an evening in late September or early October 1999, Zolman went to Ms. Hart's home and discussed an incident in which Zolman alleged that David had made contact with her in a sexual and inappropriate manner. After discussing the matter with Ms. Hart, Zolman agreed that she should not have any more contact with David and that she should speak with Ms. Kurtz about the incident. Ms. Hart called a school psychologist, Kathleen Hall, and informed her that Zolman had come to her home and made allegations about David's inappropriate sexual conduct. Hart met with the school district Director of Special Education, Dr. Connie Clark, the next morning and advised her of the incident. Hall and Clark both agreed that David was confused about the nature of his relationship with Zolman and that Zolman should never see David again. Ms. Hart was the only employee of the school district who discussed the situation directly with Zolman. Ms. Zolman claims that she spoke with Ms. Kurtz and spoke or wrote to David's doctor about David's conduct. Zolman later indicated to Ms. Hart that she had discussed the situation with Ms. Kurtz and that she was engaging in no further contact with David. Specifically, Zolman indicated that "she went and talked to David's mother, told her what happened and that David became upset during this conversation, and she probably felt like that he was now angry with her." Hart Deposition, at 25. Kurtz denies that Ms. Zolman told her about the incident. No other district employee discussed the matter directly with Ms. Kurtz. Thus, Kurtz asserts that she could not have known she needed to prohibit contact between Zolman and David. In fact, after the incident, Kurtz gave written permission to the principal and a teacher at David's new school for Zolman

to pick up David while Kurtz was undergoing a surgical procedure. David remained with Zolman while Kurtz underwent surgery and during the recovery period. It was during this time that David first began a sexual relationship with Zolman. None of the officials at David's new school had any information suggesting that Zolman had agreed not to make any contact with David.

David claims that the first time he engaged in inappropriate sexual conduct was in mid-October 1999, while spending the night with the Zolman family. David further claims that the two were caught by Ms. Zolman's husband. Zolman indicates that the first time the two engaged in sexual conduct was in early 2000. Both David and Zolman admit that sexual conduct occurred on other occasions, until Zolman's arrest in May 2000. No sexual conduct occurred between Zolman and David on school property or during school hours. Zolman was charged and pled no contest to rape and aggravated criminal sodomy charges and is presently serving her jail sentence.

While David was an intelligent 5th grader who got along well with his peers, Plaintiff's Exhibit A, he had a serious discipline problem and was frequently disruptive in class and during the school day, Defendant's Exhibit A. At one point, the principal at Faris, Janice Bair, became concerned over Zolman's numerous requests to see David and because of a conflict between Zolman and David's home room teacher. Bair's concern, which was the same concern advanced by David's home room teacher, was that allowing David to attend the lunch time art group could be construed as rewarding David's disruptive classroom behavior. Bair made clear that she did not have any concern about the nature of Zolman's contact with David during the lunch time art group. While Hart, Hall, Clark, and Bair all knew of Zolman's claim that David had made an inappropriate contact with her, none of the district officials had any concern that Zolman posed a threat to any student.

## II. Summary Judgment Standards

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Baker v. Board of Regents*, 991 F.2d 628, 630 (10th Cir.1993). The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.*,

**1320**

477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Analysis and Discussion

 Plaintiff alleges in this case that defendant was negligent in the retention and supervision of its employee, Sandra Zolman. In order to succeed in that claim, plaintiff must show "some causal relationship between the dangerous propensity or quality of the employee, of which the employer has or should have knowledge, and the injuries suffered by the third person; the employer must, by virtue of knowledge of his employee's particular quality or propensity, have reason to believe that an undue risk of harm exists to others as a result of the continued employment of that employee; and the harm which results must be within the risk created by the known propensity for the employer to be liable." *Kansas State Bank & Trust Co. v. Specialized Transp., Services, Inc.,* 249 Kan. 348, 359, 819 P.2d 587 (1991) (quoting *Hollinger v. Stormont Hospital & Training School for Nurses,* 2 Kan.App.2d 302, 307, 578 P.2d 1121, rev. denied, 225 Kan. 844 (1978)). Thus, liability results in such cases "only if the employer had reason to believe that an undue risk of harm would exist because of the employment." *Id,* 249 Kan. at 360, 819 P.2d 587.

While plaintiff's story of sexual abuse against her young child is compelling, justice requires that recompense come only from parties having some degree of responsibility for the acts of a trusted teacher. In that regard, plaintiff has not established any basis for imposing liability on the school district for Ms. Zolman's independent acts. While a number of distinct elements are embodied in *Kansas State Bank*'s formulation of the tort of negligent supervision/retention, the court concludes that plaintiff, in this case, has failed to raise a triable issue on the central question of whether defendant had any knowledge, actual or constructive, of Ms. Zolman's quality or propensity to sexually abuse one of her students. Plaintiff did not present any evidence controverting the various statements of defendant's employees that they did not know of and had no reason to know of the risk which Zolman, in retrospect, posed to David Gann.

At page five of her response brief, plaintiff attempts to establish that defendant either knew or should have known that Zolman posed a risk to her students. The first paragraph of plaintiff's argument discusses Zolman's status as a para-professional and her disagreement with Principal Bair and David's home room teacher about David's attendance at the lunch time art group. None of the facts addressed in the first paragraph indicate that any representative of defendant knew or should have known of Zolman's dangerous propensities. In the second paragraph of the fifth page of the response, plaintiff addresses the primary facts on which she relies, i.e., that "defendant knew or should have known Zolman posed a risk of harm to David Gann when she continued to have contact with David after she was specifically directed to stop." Plaintiff's Response, at 5. Plaintiff also relies on the fact that defendant did not notify her of David's initial sexual advance to Zolman. Again, none of the facts upon which plaintiff relies suggest that defendants had any knowledge that Zolman presented a risk. Plaintiff's position is subject to several weaknesses. First, the record does not support her argument that "she was specifically directed to stop" seeing David. The uncontroverted fact is that she voluntarily agreed with Ms. Hart that she should not see David and thereafter lied to Hart that she was, in fact, complying with her agreement. Secondly, the agreement to eliminate any contact with David arose out of a need to protect Zolman from David's advances and due to David's confusion about the relationship. The information confided

 

to Hart and relayed to other district officials did not indicate that Zolman was a risk. Instead, the district officials only knew that David was having some troubles and that the problem would be remedied by Zolman refusing further contact with David. Because defendant had no reason to know of Zolman's propensities, it had no reason to expect more from her than a simple agreement that the best course of action, in view of David's advances, was to cut off contact. Additionally, Hart and the other district officials had no reason not to believe Zolman who informed Hart that plaintiff had been contacted about the issue.

Plaintiff accurately states that David's principal and teacher at his new school allowed Zolman to pick up David and take him home even after the time she had agreed not to have contact with David. The problem with plaintiff's argument on this point is that different actors were involved. The officials at David's second school had no reason to suspect Zolman and had no knowledge of the events which occurred at Faris. Additionally, the officials at Faris had no reason or duty to convey to the officials at David's second school that Zolman had agreed not to see David. Because the Faris officials had no reason to suspect Zolman, they had no cause to seek to enforce her agreement not to contact David with officials from another school. In short, nothing from Zolman's past or her conduct with David about which defendant knew or should have known gave any indication that Zolman was a risk to her students. Because such actual or constructive knowledge of an employee's risk or propensity is a required element of plaintiff's cause of action, the court grants defendant's motion for summary judgment.

IT IS THEREFORE ORDERED this _____ day of April, 2002 that defendant's motion for summary judgment (dkt. no. 26) is granted.