**Jane DOE, individually and as natural mother and guardian of Barbara Doe, a minor child, Plaintiff,**

v.

**UNIFIED SCHOOL DISTRICT, School Counselor, and Elementary School Principal, Defendants.**

**No. 02–2100–JWL.**

United States District Court, D. Kansas.

April 3, 2003.

Brian J. Niceswanger, Dana P. Niceswanger, McDowell, Rice, Smith & Gaar, Overland Park, KS, for Jane Doe.

Gerald L. Green, Carol Z. Smith, Gilliland & Hayes, P.A., Hutchinson, KS, Craig Kennedy, Johnson, Kennedy, Dahl & Willis, Wichita, KS for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Jane Doe, individually and as natural mother and guardian of Barbara Doe, brings this diversity action asserting multiple claims against defendants Unified School District (the "School District"), School Counselor, and Elementary School Principal ("Principal"). Specifically, Ms. Doe contends that the defendants negligently failed to report or investigate allegations that Barbara Doe's stepfather had sexually abused her, that School District and Principal negligently supervised and retained School Counselor, and that defendants invaded Barbara Doe's right to privacy when a board member discussed these allegations with his spouse.

The matter is before the court on defendants' motions for summary judgment (Docs. 70 and 72).[1] The court will address

---

1. School District and School Counselor filed a joint motion for summary judgment (Doc. 70). Principal joined in this motion, but also filed his own motion for summary judgment (Doc. 72), alleging that he was never notified of the allegations that Barbara Doe had been sexually abused.

the bulk of the issues raised by the parties in this Memorandum and Order. However, as to Ms. Doe's negligence claims founded upon a theory that the school and/or its employees owed Barbara Doe a common law duty to investigate or report the allegations of sexual abuse and those claims founded on the theory that school counselors owe students a similar duty under common law (based on their status as professionals), the court has elected to certify questions to the Kansas Supreme Court, pursuant to K.S.A. § 60–3201 *et seq.*, as fully set forth in the court's separate Memorandum and Order filed immediately hereafter. The court grants the School District and School Counselor's motion for summary judgment, in part, and denies it, in part. The court denies Principal's separate motion for summary judgment in its entirety.[2] Specifically, the court denies summary judgment as to all negligence claims encompassed within the court's Memorandum and Order certifying questions to the Kansas Supreme Court: those claims founded on a theory that defendants had a duty under Kansas common law to investigate and disclose allegations of sexual abuse, when someone other than Barbara Doe informed the school and/or its employees that she was a victim of abuse.[3] The court grants summary judgment against Ms. Doe on her claims founded on a theory that the defendants assumed a duty to protect Barbara Doe. The court also grants summary judgment against Ms. Doe on her negligent supervision and retention claims. Finally, the court grants summary judgment against Ms. Doe on her invasion of privacy claim.

There is no doubt that what allegedly occurred to Barbara Doe at the hands of her stepfather is sad and distressing. Unless the Kansas Supreme Court recognizes duties which it has neither clearly recognized nor explicitly declined to recognize in the past, however, she has no recourse against these defendants arising out of the harms he perpetrated.

## FACTUAL BACKGROUND

The following facts are either uncontroverted or construed in the light most favorable to Ms. Doe, the nonmoving party. Barbara Doe is a 16–year old minor who was subjected to sexual abuse by her stepfather. Plaintiff Jane Doe is Barbara Doe's mother and brings this action individually and as the natural mother and guardian of her daughter.

Barbara Doe began attending the School District's elementary school when she was in second grade (1993–1994). Sometime during her third grade year (1994–1995), Barbara Doe's stepfather began sexually abusing her at their home. The abuse continued until Barbara Doe completed sixth grade (1998) or seventh grade (1999). The stepfather did not abuse her while she was at school.

At some point during Barbara Doe's fourth grade year (1995–1996), she told three school classmates about her stepfather's sexual abuse. Shortly thereafter, the three classmates felt compelled to contact School Counselor. On April 29, 1996, Barbara Doe's classmates wrote a note to School Counselor indicating that they were worried about a friend. On April 30, 1996, the three girls met with School Counselor. During the course of that meeting, the classmates told School Counselor that Bar-

---

**2.** Of course, because Principal joins in School District and School Counselor's motion for summary judgment, he is entitled to summary judgment to the extent the court grants School District and School Counselor's motion.

**3.** The court denies the motion for summary judgment as to these claims, subject to refiling should the Kansas Supreme Court find that no duty exists.

bara Doe informed them that her stepfather had raped her. The School Counselor believed that the three classmates were honest and trustworthy and she had no concern that they were making up the allegations of sexual abuse.

After the meeting, one of the classmates did not think that School Counselor believed them, did not think she was going to do anything about it and that she acted like they should not worry about it. Another classmate, however, recalls School Counselor saying that she would take care of the situation. Barbara Doe did not know that her classmates told the School Counselor about the abuse until law enforcement officials arrested her stepfather several years later.

The Elementary School had no written policies that dealt with reporting allegations of sexual abuse, but the School District's general policy was to comply with Kansas reporting statutes. Though neither the School District nor Principal trained School Counselor on its policy, she knew that state law obligated her to report suspected sexual abuse. Even so, School Counselor failed to report these allegations of sexual abuse to the State Department of Social and Rehabilitation Services ("SRS") or to any other law enforcement agency. Moreover, she did not talk to Barbara Doe about the sexual abuse, she did not report the allegations to Barbara's mother (Jane Doe), and she did not speak with any of Barbara's teachers to discern whether they noticed any behavioral problems. School Counselor, however, informed the Principal about her meeting with Barbara's classmates. The Principal did not notify SRS or law enforcement of the sexual abuse allegations, nor did he investigate further such allegations.

After Barbara's classmates met with School Counselor, the sexual abuse continued until 1998 or 1999. Barbara has been diagnosed with depersonalization disorder as a result of her stepfather's sexual abuse. Among other problems, Barbara feels ashamed and insecure, struggles with general life activities and relationships, her grades are declining, she has trouble focusing and communicating, and suffers nightmares. Barbara will require ongoing treatment in the future.

The School District first hired School Counselor beginning in the 1995–1996 school year (Barbara's fourth grade year) to serve as its elementary school and middle school counselor. For the previous two years, the School District did not have a school counselor to serve its students. At the time the School District hired School Counselor, she had an Associates degree from Cloud County Community College and a Bachelor of Arts degree from Bethany College. At the time of her hiring, she had not obtained state certification as a counselor, but was enrolled in the Elementary Education Masters program and the Counseling Masters program at Fort Hays State University. The School District obtained approval for and a waiver of the certification requirements from the Kansas State Board of Education in order to employ School Counselor. School Counselor completed her Elementary Masters in 1997 and her Counseling Masters in 1998. She received her Counseling Masters and certification effective February 8, 1999 and has maintained it since that date. Prior to working for School District, School Counselor taught fifth through eighth grade reading, English, writing and spelling at Grinnell, Kansas, from 1981 to 1990. Thereafter, she was employed as the admissions counselor and academic advisor for Barton County Community College from 1991 to 1995. Principal, however, knew that School Counselor had not received her certification at the time she was hired, yet he did not exercise any heightened degree of scrutiny over her performance and or provide any on-the-job training.

As part of her job duties for School District, School Counselor met with each of the Elementary School classes to discuss different topics, including improper touching. School Counselor instructed the students that, in situations where improper touching is occurring, they should report it to someone they trust, including trusted friends or the School Counselor. Thus, when Barbara's classmates notified School Counselor of the allegations of sexual abuse, they were acting in accord with the advice she had given them.

After completing eighth grade, Barbara Doe and her mother moved to California in the summer of 2000. In April of 2001, Jane Doe was assaulted and raped by Barbara Doe's stepfather. After learning of this assault, Barbara Doe told her mother that the stepfather had sexually abused her. On August 23, 2001, Jane Doe and Barbara Doe filed notice of a claim with the School District pursuant to K.S.A. § 12–105(6). The school board reviewed the claim in an executive session. School District policy requires that matters discussed during such sessions is to remain confidential. Even so, one of the three classmates of Barbara Doe who originally reported the alleged abuse to School Counselor, Joni Karnowski, overheard a school board member telling his wife about the allegations contained in Ms. Doe's notice of claim. There is no evidence that anyone other than the board member, his spouse and Joni Karnowski overheard the conversation.

Ms. Doe originally filed the present action on March 7, 2002. Ms. Doe amended her complaint on October 24, 2002. On January 21, 2003, defendants filed their motions for summary judgment.

## STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the exhibits in proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guarantee & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams*, 233 F.3d at 1246.

The court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## DISCUSSION

Defendants contend that Ms. Doe has failed to establish a genuine issue of material fact or otherwise has failed to state a claim upon which relief may be granted on her claims of general negligence, negligent retention and supervision, and invasion of privacy. The court will address each claim in turn.

## I. General Negligence Claims

Ms. Doe alleges that defendants, based on several theories, owed Barbara a duty to report and/or investigate the allegations of sexual abuse. First, she contends that the School District and its employees had a common law duty to report and/or investigate the allegations. Second, Ms. Doe alleges that School Counselor had a duty, as a professional, to report the alleged abuse or to follow up on the accusations. Finally, Ms. Doe believes that the defendants assumed a duty to report and/or investigate the allegations based on their acts and conduct toward Barbara Doe.

In a subsequent Memorandum and Order, the court will certify two questions to the Kansas Supreme Court: (1) whether Kansas common law imposes a duty upon a school district and/or its employees, to report to the appropriate authorities allegations that a parent is sexually abusing a child or to investigate further the validity of such allegations when someone other than the student informs the school and/or its employees that the student has been abused; and (2) whether Kansas common law imposes a duty upon school counselors, based on their professional status, to report to the appropriate authorities allegations that a parent is sexually abusing a child or to investigate further the validity of such allegations when someone other than the student informs the counselor that the student has been abused. The Kansas Supreme Court's answer to these two inquiries likely will be determinative of Ms. Doe's first two theories of negligence. As such, the court denies defendants' motion for summary judgment as to Ms. Doe's negligence claims founded upon a theory that the school and/or its employees owed Barbara Doe a common law duty to investigate or report the allegations of sexual abuse and those claims founded on the theory that school counselors owe students a similar duty under common law, based on their status as professionals.[4]

---

**4.** The court also denies defendants' motion for summary judgment requesting the court dismiss Ms. Doe's claims under the public duty doctrine. Should the Kansas Supreme Court find, based on the questions this court certified, that a special relationship exists between Barbara Doe and School District, Prin-

Moreover, the court denies Principal's motion for summary judgment, which was founded on his lack of notice of the allegations of sexual abuse, because Ms. Doe has demonstrated a genuine issue of material fact that School Counselor informed him of such allegations.[5]

■■■ The court, however, will address defendants' motion to dismiss Ms. Doe's negligence claims that are founded on a theory that defendants assumed a duty to protect Barbara Doe. "Actionable negligence must be based upon breach of duty." *Irvin v. Smith,* 272 Kan. 112, 122, 31 P.3d 934 (2001) (internal citations omitted). "Whether a legal duty exists is a question of law." *Id.* The Kansas Supreme Court has recognized that an individual may create a specific legal duty by undertaking to render services to another, adopting the principles set forth in the Restatement (Second) of Torts § 324A. *Honeycutt By and Through Phillips v. City of Wichita,* 251 Kan. 451, 464, 836 P.2d 1128 (1992). This section provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A.

"The threshold requirement for the application of the Restatement (Second) of Torts § 324A (1964) is a showing that the defendant undertook, gratuitously or for consideration, to render services to another." *Honeycutt By and Through Phillips,* 251 Kan. at 464, 836 P.2d 1128 (quoting *McGee v. Chalfant,* 248 Kan. 434, 806 P.2d 980 (1991)). "In order to meet this requirement, the evidence must show the defendant did more than act, but through affirmative action assumed an obligation or intended to render services for the benefit of another." *Id.* "For a defendant to meet the threshold requirements of § 324A, the defendant must not only take affirmative action to render services to another, but the person to whom the services are directed must accept such services in lieu of, or in addition to, such person's obligation to perform the services." *Id.* (quoting *Gooch v. Bethel A.M.E. Church,* 246 Kan. 663, 676, 792 P.2d 993 (1990)). "[O]ne who does not assume an obligation to render services does not owe a duty to third persons." *Id.* (quoting *Anderson v. Scheffler,* 248 Kan. 736, Syl. ¶ 3, 811 P.2d 1125 (1991)).

To survive summary judgment, Ms. Doe must demonstrate a genuine issue of mate-

---

cipal and School Counselor, then that doctrine would not bar her negligence claims. *McCormick v. Bd. of County Comm'rs of Shawnee County,* 272 Kan. 627, 648, 35 P.3d 815 (2001). (holding that "under the public duty doctrine, officials have no duty to any individual *except where circumstances create a special relationship or specific duty*"). For the same reason, the court must deny defendants' motion for summary judgment as to Ms. Doe's negligence claims based on discretionary immunity provided to state agencies under the Kansas Tort Claims Act. *Barrett ex rel. Barrett v. Unified Sch. Dist. No. 259,* 272 Kan. 250, 263, 32 P.3d 1156 (2001) (recognizing that "the discretionary function exception is not applicable in those situations where a legal duty exists, either by case law or by statute").

5. Principal also joined with School District and School Counselor's motion for summary judgment. To the extent the court grants summary judgment against Ms. Doe based on that motion, the claims similarly are dismissed against Principal.

rial fact that the defendants (1) affirmatively undertook a duty to protect Barbara Doe from her stepfather; (2) they negligently failed to perform that undertaking, and (3) such negligence either increased the risk of harm to Barbara Doe or caused her to suffer harm because of her reliance on the defendants' undertaking[6]. Defendants contend that the acts of School Counselor, Principal and the School District do not constitute an affirmative undertaking sufficient to create a duty. Moreover, the defendants argue that even if they undertook a duty to report or investigate the allegations, Ms. Doe cannot hold them liable for Barbara's injuries because they did not increase the risk of harm (because Barbara's stepfather created the risk) and because Barbara did not rely on any duty defendants' assumed. In her response, Ms. Doe argues that defendants assumed a duty to report or investigate the allegations of abuse because they educated students how to distinguish between appropriate and inappropriate touching, told the students to report inappropriate touching to friends or to School Counselor, and School Counselor told the classmates that she would take care of the situation.

The court agrees with defendants that the School District, Principal and School Counselor did not take an affirmative act sufficient to create a specific legal duty. While School Counselor educated students about sexual abuse and told them how to report it, she did not specifically agree to take any affirmative act to protect Barbara Doe.[7] Were the court to find that teachers and schools assume legal duties every time they educate and instruct students on mat-

**6.** The Restatement also recognizes liability when a defendant has "undertaken to perform a duty owed by the other to the third person...." Restatement (Second) of Torts § 324A(b). There are no allegations that the School District, Principal or School Counselor undertook such a duty in this case.

**7.** While the School District had a policy to report sexual abuse, that policy was founded on the statutory obligations the Kansas Legislature imposed under K.S.A. § 38–1522. The Kansas Supreme Court, however, has held that this statute does not create a private right of action for those aggrieved by a violation of this duty. *Kansas State Bank & Tr. Co. v. Specialized Transp. Serv., Inc.*, 249 Kan. 348, 373, 819 P.2d 587 (1991) (noting that "[i]f the legislature had intended to grant a private right of action in K.S.A. 38–1522 it would have specifically done so"). The court does not believe, nor has Ms. Doe argued, that compliance with state law constitutes an affirmative act sufficient to create a legal obligation to render services for the benefit of Barbara Doe. The Restatement imposes liability on "[o]ne who undertakes, *gratuitously or for consideration*, to render services to another...." Restatement (Second) of Torts § 324A (emphasis added). School District, Principal and School Counselor were not rendering services gratuitously or for consideration by complying with state mandated dis-

closure requirements. In short, the School District adopted its policy to comply with state law and there is no evidence that it adopted the policy to protect students from parental abuse that might occur off school grounds. *Prague v. Monley*, 29 Kan.App.2d 635, 639, 28 P.3d 1046 (2001) (finding no liability under § 324A where bar owner adopted employee alcohol policy to minimize litigation and no evidence suggested that bar adopted policy to protect third parties from injuries inflicted by its intoxicated employees). This fact also distinguishes this case from *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984). In *Cansler*, the Leavenworth County Sheriff's Office entered into an agreement whereby it promised to notify state penitentiary officials and other law enforcement agencies when a prisoner escapes. *Id.* at 567, 675 P.2d 57. Plaintiff alleged that defendants breached this assumed duty, resulting in injury. The court found that the complaint sufficiently alleged a claim for breach of an assumed duty of care arising out of the contract. *Id.* That duty, however, was not imposed by statute, but instead, it was an affirmative obligation that the County agreed to undertake. Here, however, the School District's mandatory reporting policy was founded on mere compliance with state statute.

ters of public health or safety, then school liability would be infinite. To the extent such educational efforts can be characterized as an undertaking, it was a limited undertaking as to Barbara Doe. That is, during School Counselor's sexual abuse seminars, she informed students, generally, how to respond to sexual abuse. School Counselor did not affirmatively or expressly agree to assume any duty to investigate or report sexual abuse, in general, or the abuse inflicted upon Barbara, in particular. Such "a limited undertaking by a defendant does not give rise to a duty under § 324A." *Beckner v. Jensen,* 29 Kan. App.2d 129, 135, 24 P.3d 169 (2001); *see, e.g., McGee v. Chalfant,* 248 Kan. 434, 806 P.2d 980 (1991) (concluding that defendants did not assume a duty to prevent plaintiff from driving even though they knew he was drunk and agreed to take him to his automobile).

■ Independently, even assuming that the defendants had assumed a duty to report or investigate the allegations of sexual abuse, they cannot be held liable for their failure to exercise reasonable care to carry out that undertaking. As stated above, such liability only attaches if the "failure to exercise reasonable care increases the risk" of harm or a person suffers harm "because of reliance of the other or the third person upon the undertaking." Neither situation exists in this case. First, the defendants' failure to report or investigate the allegations of sexual abuse did not *increase* the risk of harm. The Kansas Court of Appeals analysis in *Beebe v. Fraktman,* 22 Kan.App.2d 493, 921 P.2d 216 (1996), is directly on point. In *Beebe,* the mother of a deceased child, A.R., brought suit against SRS alleging that it and its employees negligently failed to investigate adequately allegations that A.R.'s father was physically abusing her, after the agency undertook efforts to protect the child. *Id.* at 494, 921 P.2d 216. SRS employees received two separate re-

ports of abuse. *Id.* First, A.R.'s grandmother and her counselor reported that A.R.'s father was abusing her. *Id.* Later, A.R.'s pediatrician contacted SRS regarding possible sexual abuse. *Id.* An SRS employee informed the pediatrician that a supervisor would "follow up" on the reported allegations. *Id.* SRS decided not to open an investigation. *Id.* A.R. died and her father was convicted of her murder. *Id.* A.R.'s mother sued SRS and the trial court dismissed the claim after ruling that it had no legal duty to protect A.R. from abuse.

On appeal, Ms. Beebe argued that SRS undertook the duty to render protective services to A.R. The court found that any duty SRS undertook did not render it liable for negligently carrying out its undertaking because A.R.'s father created the risk of harm:

> By Monday morning quarterback standards, SRS might have decreased the risk to A.R. had it opened a file and actively investigated; however, we cannot state that SRS's failure to do so increased the risk of harm. A.R.'s father created the risk of harm, not SRS.

*Id.* at 496, 921 P.2d 216. As in *Beebe,* it was Barbara Doe's stepfather, not the defendants, who created the risk of harm.

Second, Barbara Doe did not rely on any act or service the School District, Principal or School Counselor allegedly undertook. At best, the evidence establishes that School Counselor told one of the three reporting classmates of Barbara Doe that she would take care of the situation. As explained above, to undertake a legal duty, a "defendant must not only take an affirmative act, but the person to whom the services are directed must accept such services in lieu of, or in addition to, such person's obligation to perform the services." *Gooch,* 246 Kan. at 676, 792 P.2d 993. Barbara Doe never spoke to School

Counselor about the alleged abuse and School Counselor never told Barbara Doe that she would handle the situation. Thus, Barbara Doe never accepted School Counselor' services in lieu of or in addition to another person's obligation to report the sexual abuse and therefore, she could not have relied on any duty assumed by the defendants.

The court grants summary judgment in favor of defendants on Ms. Doe's negligence claims that are founded on the theory that defendants assumed a legal duty to protect Barbara Doe. Ms. Doe failed to demonstrate a genuine issue of material fact that the defendants took affirmative steps to protect Barbara Doe from the acts of her stepfather and, alternatively, even if they did take such steps they cannot be held liable for their failure to adequately fulfill that duty because such a failure did not increase the risk of harm to Barbara Doe nor did she rely on any of defendants' alleged undertakings.

## II. Negligent Hiring and Retention

Ms. Doe contends that School District negligently retained and supervised School Counselor. Defendants contend that she has failed to demonstrate a genuine issue of material fact as to whether the employers knew or should have known she posed an undue risk of harm.

"When a third party asserts a negligent retention and supervision claim against an employer, liability results not because of the employer-employee relationship, but because the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor." *Schmidt v. HTG, Inc.*, 265 Kan. 372, 401, 961 P.2d 677 (Kan.1998). "The employer is subject to liability only for such harm as is within that risk." *Id.* "If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the

employer had reason to believe would be likely to cause harm." *Id.* "However, it is not necessary that the precise nature of the injury alleged by the third-party plaintiff would have been foreseen by the employer." *Id.*

Thus, to succeed on this claim, Ms. Doe must show "some causal relationship between the dangerous propensity or quality of the employee, of which the employer has or should have knowledge, and the injuries suffered by the third person; the employer must, by virtue of knowledge of his employee's particular quality or propensity, have reason to believe that an undue risk of harm exists to others as a result of the continued employment of that employee; and the harm which results must be within the risk created by the known propensity for the employer to be liable." *Kurtz v. UNIFIED Sch. Dist. No. 308*, 197 F.Supp.2d 1317, 1320 (D.Kan. 2002) (quoting *Kansas State Bank & Tr. Co. v. Specialized Transp., Serv., Inc.*, 249 Kan. 348, 359, 819 P.2d 587 (1991)). "Whether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact. Only when reasonable persons could arrive at but one conclusion may the court determine the question as a matter of law." *Kansas State Bank & Tr. Co.*, 249 Kan. at 362, 819 P.2d 587.

Defendants argue that Ms. Doe has failed to demonstrate a genuine issue of material fact as to School District's knowledge that School Counselor posed an undue risk of harm to her students. School District notes that School Counselor had a Bachelors degree in education and was completing her Master degree in education when she was hired. She had worked nine years as a school teacher in another district, and five years as an academic adviser and an admissions counselor at a community college. At the time she received the report of Barbara's abuse, she was pursu-

ing her Masters degree in counseling, the State Board of Education had waived the certification requirements for her position and approved her hiring, and the undisputed evidence establishes that she understood the reporting requirements imposed under K.S.A. § 38–1522. In her response, Ms. Doe simply argues that the School District and Principal had a heightened duty to supervise School Counselor, knowing she had not completed her counseling certification.

The court disagrees with Ms. Doe's analysis. School Counselor had obtained a Bachelors degree in education, which was reinforced by nearly fourteen years of employment in the education sector. Though School District and Principal knew she had not completed her counselor's certification at the time of her hiring, she was pursuing her Masters degree in counseling and the State Board of Education waived the certification requirements to permit School District to hire her. Moreover, School Counselor testified in her deposition that based on her prior experience as a teacher and a school counselor she knew that a state statute obligated her to report allegations of abuse and there is no evidence suggesting that she failed to comply with reporting requirements (or any other school policy, for that matter) before Barbara Doe's classmates met with her on April 30, 1996. Ms. Doe has failed to identify any facts that would suggest that School Counselor's failure to fully acquire her counselor's certification at the time she was hired created an undue risk that she would fail to comply with state reporting requirements. Thus, the court finds that reasonable persons could arrive at but one conclusion: School District and Principal had no reason to believe that School Counselor presented an undue risk of harm to others because she had not completed state certification requirements at the time she was hired. As such, summary judgment is granted in favor of the defendants on Ms. Doe's claim of negligent hiring and supervision.

## III. Invasion of Privacy

■ Ms. Doe argues that the defendants violated Barbara Doe's right to privacy (by means of publicizing a matter concerning her private life) when a school board member disclosed to his spouse information concerning the allegations of abuse that were contained in Ms. Doe's notice of complaint. In their motion for summary judgment, defendants contend that Ms. Doe has failed to demonstrate a genuine issue of material fact that the degree of publicity was sufficient to constitute an actionable invasion of privacy claim.

In *Dotson v. McLaughlin,* 216 Kan. 201, 207, 531 P.2d 1 (1975), the Kansas Supreme Court recognized the tort of invasion of privacy, adopting the provisions of the Restatement (Second) of Torts § 652A. The Restatement provides:

(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other. (2) The right of privacy is invaded by (a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or (b) appropriation of the other's name or likeness, as stated in § 652C; or (c) unreasonable publicity given to the other's private life, as stated in § 652D; or (d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

Restatement (Second) of Torts § 652A. Here, Ms. Doe contends that the board member's disclosure to his spouse constituted "unreasonable publicity given to [Barbara Doe's] private life, as stated in § 652D", which provides:

One who gives publicity to a matter concerning the private life of another is

subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

Restatement (Second) of Torts § 652D.

Defendants admit that a school board member told his spouse about the allegations of sexual abuse and that one of the three classmate of Barbara Doe who reported the alleged abuse to School Counselor, Joni Karnowski, overheard the conversation. They contend, however, that such disclosure did not sufficiently publicize the facts so as to create liability under § 652D. Indeed, the Restatement distinguishes "publication" of private facts from "publicity" of such facts, noting that the latter "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a. "The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public." *Id.* "Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id.* Moreover, the Kansas Supreme Court has adopted this distinction between publication and publicity. In *Werner v. Kliewer,* 238 Kan. 289, 296, 710 P.2d 1250 (1985), plaintiff alleged that defendant Vernon Kliewer, M.D., violated her right to privacy by disclosing sensitive medical information to a judge and court personnel without her consent. Relying on the Restatement, the court found that there was insufficient publicity, explaining "[h]ere the only publicity was to the court services officer, the district judge handling the divorce action,

and the attorneys for the parties, all being officers of the court." *Id.*

In her response to the summary judgment motion, Ms. Doe simply alleges that the disclosure was substantially certain to become one of public knowledge because *it* occurred in a very small north-central Kansas town. Ms. Doe cites to the deposition testimony of School Counselor wherein she agreed that there are very few secrets in a town of that size and wherein she stated that among the faculty "there's [sic] secrets that are let out." Ms. Doe, however, fails to produce any evidence that the particular secret upon which she requests relief was disclosed beyond the school board member, his spouse, and the former classmate who overheard the conversation. In fact, Ms. Doe did not controvert the fact that "Barbara Doe has not heard that anyone else in [the town] knows about her claims." As such, the court finds that the uncontroverted facts establish that defendants' disclosure of private facts was limited to only one individual: the school board member's spouse. The school board member was already privy to the private facts based on his position on the board and Barbara Doe had previously told the classmate who overheard the conversation, Jodi Karnowski, about the abuse. Based on controlling Kansas precedent, such disclosure, as a matter of law, does not constitute publicity sufficient to create a cause of action for invasion of privacy. As such, the court grants summary judgment in favor of defendants as to this claim.

## CONCLUSION

The court denies School District and School Counselor's motion for summary judgment, subject to refiling after the Kansas Supreme Court responds to the certified questions, as to Ms. Doe's negligence claims founded upon a theory that the school and/or its employees owed Barbara Doe a common law duty to investi-

gate or report the allegations of sexual abuse and those claims founded on the theory that school counselors owe students a similar duty under common law, based on their status as professionals. The court grants these defendants' motion as to Ms. Doe's negligence claims based on a theory of an assumed duty. The court grants these defendants' motion for summary judgment as to Ms. Doe's negligent supervision and retention claims. Finally, the court grants these defendants' motion for summary judgment as to Ms. Doe's invasion of privacy claim. The court denies Principal's separate motion for summary judgment in its entirety because Ms. Doe demonstrated a genuine issue of material fact that School Counselor informed him of the allegations of sexual abuse. Of course, as to Principal, he is free to reassert that he had no duty in any event based on the response by the Kansas Supreme Court to the certified questions.

**IT IS THEREFORE ORDERED THAT** School District and School Counselor's motion for summary judgment (Doc. 70) is granted in part and denied in part, as explained within this order. Principal's motion for summary judgment (Doc. 72) is denied in its entirety.

**IT IS FURTHER ORDERED THAT** defendants' motion to exclude the expert testimony of Deanna S. Pledge, PH.D, and Stephen H. Dinwiddie, M.D., (Doc. 68) is denied as moot. The motion is subject to refiling pending the Kansas Supreme Court's response to this court's certified questions. This matter is removed from the trial calendar, subject to being re-set at a later date after the Kansas Supreme Court responds to the certified questions. All other pre-trial deadlines are suspended and will be re-set as necessary.