**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 28 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MERRY A. KURTZ, as parent and
natural guardian of a minor,
David Lee Gann,

        Plaintiff - Appellant,

v.

UNIFIED SCHOOL DISTRICT NO.
308,

        Defendant - Appellee.

No. 02-3162
(D.C. No. 01-CV-1122-JTM)
(D. Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, **BRISCOE**, Circuit Judge and **SHADUR**,[**]
District Judge.

---

After examining the briefs and the appellate record, this three-judge panel

has determined unanimously that oral argument would not be of material

assistance in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th

Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Milton I. Shadur, Senior District Judge for the Northern
District of Illinois, sitting by designation.

Plaintiff-Appellant, Merry Kurtz, initiated this diversity action on behalf of her minor son, David Lee Gann, alleging that Defendant-Appellee, Unified School District No. 308 ("USD 308"), was negligent under Kansas law in retaining and supervising Sandra Zolman, a speech and language para-professional employed by USD 308. On April 16, 2002, the district court granted defendant's motion for summary judgment. *Kurtz v. Unified School Dist. No. 308*, 197 F.Supp.2d 1317 (D. Kan. 2002). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Background

Plaintiff, Merry Kurtz, is the mother and natural guardian of David Lee Gann. Sandra Zolman, an employee of USD 308, was charged with and pled no contest to rape and aggravated criminal sodomy charges arising out of sexual contacts between Ms. Zolman and David Gann during 2000 and perhaps, as explained later, during 1999 as well.[1]

During the 1998-99 school year, David Gann was a 12-year-old fifth grader at Faris Elementary School in Hutchinson, Kansas. Faris Elementary School is part of USD 308. While at Faris, David received special education services because of a learning disability. Ms. Zolman was a para-professional for USD 308 and worked with Pamela Hart, a speech pathologist with USD 308, during the

---

[1] *See* note 5, *infra*.

1998-99 school year.  Ms. Hart and Ms. Zolman worked together at Faris and Morgan Elementary Schools in Hutchinson, and both worked with David Gann during the 1998-99 school year.

While David was an intelligent fifth grader who got along well with his peers, he did have behavioral problems and had threatened suicide.  During the 1998-99 school year, Ms. Zolman requested that David participate in a lunchtime art group that she had created for children whom she felt needed positive stimulus, in the hope that the sessions might improve their classroom behavior.  At some point during the year, Faris' principal, Janice Bair, became concerned over Ms. Zolman's numerous requests to see David.  Specifically, Principal Bair felt that David might construe his sessions with Ms. Zolman as a "reward" for his disruptive classroom behavior.  Further, David's classroom teachers apparently felt that, at times, Ms. Zolman's requests were "interfering" with David's classroom work.  Principal Bair did not, however, have any concerns about the nature of Ms. Zolman's contacts with David.[2]  In fact, no USD 308 officials had any concerns that Ms. Zolman posed a threat to David Gann or any other student.

During the 1998-99 school year, Ms. Zolman introduced her 11-year-old son, Austin, to David Gann.  David and Austin became friends and played

---

[2] In her deposition, Principal Bair stated:  "[N]othing had occurred to me as far as anything other than a normal student-teacher relationship."

together frequently during the summer of 1999. David would often spend the night or a weekend with the Zolman family. As a result, Ms. Kurtz and Ms. Zolman also became better acquainted.

In August 1999, David enrolled in the sixth grade at Lincoln Grade School. Although Ms. Zolman did not work at Lincoln, David and Austin remained friends and David continued spending time with the Zolman family. At some point, around October 1999, Ms. Zolman went to Ms. Hart's home and discussed an incident in which Ms. Zolman alleged that David Gann had made an inappropriate sexual advance towards her while spending the night at the Zolman residence. After discussing the matter with Ms. Hart, Ms. Zolman agreed that she should discontinue contact with David Gann. Ms. Zolman also told Ms. Hart that she would speak with David's mother about the incident. Subsequently, Ms. Zolman indicated to Ms. Hart that she had discussed the situation with Ms. Kurtz and that she had ceased having contact with David.[3]

After learning of the incident, Ms. Hart became concerned for Ms. Zolman's safety.[4] Ms. Hart contacted a Morris Elementary School psychologist,

---

[3] Ms. Zolman claims that she spoke with Ms. Kurtz and spoke or wrote to David's doctor about his conduct. Ms. Kurtz denies that Ms. Zolman told her about the incident.

[4] In her deposition, Ms. Hart stated that she thought Ms. Zolman "was an excellent para-[professional]" and that she had no concerns that Ms. Zolman might pose a risk to David.

Kathleen Hall, and informed her about Ms. Zolman's allegations. The next morning, Ms. Hart met with USD 308's Director of Special Education, Dr. Connie Clark, and advised her of Ms. Zolman's allegations. Ms. Hall and Dr. Clark both agreed that David was confused about the nature of his relationship with Ms. Zolman and that Ms. Zolman should cease contact with David. Ms. Hall recalled that Ms. Zolman had difficulty terminating the relationship "because she saw him as so needy and . . . she considered herself a mentor." Neither Ms. Hall nor Dr. Clark, however, had any concerns that Ms. Zolman might pose a threat to David.

Sometime later, while David was at Lincoln, Ms. Kurtz had to undergo a surgical procedure. Ms. Kurtz gave written permission to the principal at Lincoln for Ms. Zolman to pick up David. In fact, David stayed at the Zolman residence while Ms. Kurtz underwent surgery and during her recovery period. None of the officials at Lincoln had any information regarding Ms. Zolman's prior agreement to discontinue contact with David. In her deposition, Ms. Kurtz stated that, at this point, "[Ms. Zolman] was becoming a trusted friend." Tragically, during this same time period, Ms. Zolman was engaging in inappropriate sexual conduct with David.

Although the exact time period during which the sexual contacts took place

is unclear,[5] it is undisputed that no sexual conduct occurred between Ms. Zolman and David on school property or during school hours.  Further, neither Ms. Hart, Ms. Hall, Dr. Clark, nor Principal Bair – the only USD 308 officials who had knowledge of Ms. Zolman's allegations in October 1999 – were aware that Ms. Zolman had not terminated her relationship with David following the October 1999 incident.

## II.  Discussion

### A.    Standard of Review

"We review the grant of summary judgment de novo, applying the same legal standards as used by the district court."  *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).  Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Cooperman*, 214 F.3d at 1164.

---

[5]  David Gann claims that he first engaged in sexual conduct with Ms. Zolman in October of 1999, while spending the night at the Zolman residence. Ms. Zolman, on the other hand, claims that the first time the two engaged in sexual conduct was in early 2000.  Both David and Ms. Zolman admit that sexual conduct occurred on other occasions, until Ms. Zolman's arrest in May 2000.

B.    Analysis

"[A] federal court sitting in diversity must ascertain and apply state law to reach the result the [Kansas] Supreme Court would reach if faced with the same question." *Cooperman*, 214 F.3d at 1164. The Kansas Supreme Court has articulated the doctrine of negligent hiring and retention as follows: "A master may be liable for injuries to a third person which are the direct result of the incompetence or unfitness of his servant where the master was negligent in employing the servant or in retaining him in employment when the master knew or should have known of such incompetence or unfitness of the servant." *Plains Resources, Inc. v. Gable*, 682 P.2d 653, 662 (Kan. 1984). The court in *Plains Resources* further expounded on the doctrine, noting that:

> "Retaining in employment a servant who is, or should be, known to be incompetent, habitually negligent, or otherwise unfit, is such negligence on the part of the master as will render him liable for injuries to third persons resulting from the acts of the incompetent servant, whether the master's knowledge of the servant's incompetency was actual, or direct, or constructive; the master is chargeable with knowledge of the incompetency of the servant if by the exercise of due or reasonable care or diligence he could have ascertained such incompetence."

*Id.* at 663 (quoting 57 C.J.S. *Master & Servant* § 559) (emphasis in original removed). "When a third party asserts a negligent retention and supervision claim against an employer, liability results not because of the employer-employee relationship, but because the employer had reason to believe that an undue risk of

harm to others would exist as a result of the employment of the alleged tortfeasor." *Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 598 (Kan. 1991).

In general, "[w]hether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact." *Id.* But where reasonable minds could arrive at only one conclusion, the trial court may determine the question of foreseeability as a matter of law. *Id.*

In *Specialized Transportation*, the Kansas Supreme Court relied on seven facts in concluding that the defendants, a school district and the school bus transportation service, should have foreseen the risk of sexual molestation as a result of their employment and retention of the employee-perpetrator, the victim's bus driver: (1) the victim's teacher testified that she believed the child's behavioral problems were attributable to being exposed to sexual conduct; (2) the victim's teacher specifically questioned the victim's mother about her suspicions; (3) the victim's teacher stated that she thought the employee-perpetrator was "emotionally disturbed"; (4) the school principal told the victim's mother that he knew what their meeting (relating to the sexual molestation) was going to be about before the victim's mother told him; (5) the school principal told the school district's transportation director that there was a possibility that the employee-perpetrator had molested the victim, and the principal had this conversation

before the victim's mother told the principal about the victim's allegations; (6) the victim's mother reported the employee-perpetrator's suspicious behavior; and (7) the victim's mother testified that the employee-perpetrator called the children names and that he was "out of control." *Id.*

Although the Kansas Supreme Court concluded that the risk of sexual molestation by the employee-perpetrator was foreseeable and accordingly denied the defendants' motion for summary judgment, it noted that "[t]his is a close case." *Id.* at 599. The court made it quite clear that it did not intend to "requir[e] clairvoyance in employers." *Id.*

Contrary to the facts in *Specialized Transportation*, in this case, no USD 308 officials harbored *any* suspicions regarding the nature of Ms. Zolman's contacts with David Gann.[6] By all appearances, Ms. Zolman was a model employee. Further, in her deposition, Ms. Kurtz noted that David's behavioral problems existed prior to his initial contact with Ms. Zolman; in fact, David's behavior apparently improved during the 1998-99 school year. Finally, although Ms. Zolman did report to USD 308 officials that David Gann had made an inappropriate sexual advance towards her while at the Zolman residence, the officials had no reason to believe that Ms. Zolman had initiated or encouraged

---

[6] Ms. Zolman did not sexually molest David on school property or during school hours. In fact, it appears that all sexual contact between David and Ms. Zolman occurred on occasions when he spent the night at the Zolman residence.

David's conduct. Thus, USD 308 officials had no basis to suspect that Ms. Zolman's continued employment at Faris and Morgan Elementary Schools presented a risk to any of the students at the two schools, or specifically to David Gann, who was then a student at Lincoln Grade School. Even assuming that USD 308 officials owed a heightened duty[7] to David Gann, the Kansas Supreme Court has made quite clear that it *does not* "requir[e] clairvoyance in employers." *Id.*

Ms. Zolman's sexual abuse of David Gann is tragic. Yet the circumstances in this case, relating to the culpability of the defendant-employer, are a far cry from the facts in *Specialized Transportation*. According to the Kansas Supreme Court, *Specialized Transportation* was a "close case"; thus, in this case, we must conclude that "reasonable persons could arrive at but one conclusion." *Id.* at 598-99. As the district court found, "nothing from Zolman's past or her conduct with David about which [USD 308 officials] knew or should have known gave any indication that Zolman was a risk to her students." *Kurtz*, 197 F.Supp.2d at 1321. We therefore hold that the risk of Ms. Zolman sexually molesting David Gann was not foreseeable as a matter of law.[8]

---

[7] We assume, without deciding, that plaintiff is correct in her contention that *Specialized Transportation* set forth a "heightened duty" for "all persons entrusted with children," although we note that this language is from the trial court's instruction rather than a specific statement by the Kansas Supreme Court. *See id.* at 596.

[8] In her brief, plaintiff alternatively argued that USD 308 had a duty to
(continued...)

### III. Conclusion

Based on the foregoing, we AFFIRM the district court's grant of summary judgment.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge

---

[8](...continued) warn officials at Lincoln Grade School that Ms. Zolman was not to have contact with David. Again, however, because it was not foreseeable that Ms. Zolman would sexually molest David or any other student, and since USD 308 officials were not aware of any previous inappropriate sexual conduct by Ms. Zolman, no duty to warn arose in this case.