No. 70,357

P.W. and R.W., for and on behalf of themselves and for and on behalf of A.W. and R.W., *Appellees*, v. KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, and KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT, *Appellants*.

(877 P.2d 430)

Opinion filed July 15, 1994.

*Marvin G. Stottlemire*, of Kansas Department of Health and Environment, argued the cause and was on the brief for appellant Kansas Department of Health and Environment.

*Kenneth R. Smith*, of Kansas Department of Social and Rehabilitation Services, argued the cause and was on the brief for appellant Kansas Department of Social and Rehabilitation Services.

*Kevin L. Diehl*, of Eugene B. Ralston & Associates, of Topeka, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: Defendant-appellant Kansas Department of Social and Rehabilitation Services (SRS) appeals the denial of its motions to dismiss and for summary judgment on the negligence claim asserted by plaintiffs P.W. and R.W. for themselves and on behalf of their children, A.W. and R.W. Defendant-appellant Kansas Department of Health and Environment (KDHE) appeals the denial of its motion for summary judgment in the same matter. The district court made the findings required by K.S.A. 60-2102(b) for an interlocutory appeal to the Court of Appeals, and we subsequently transferred the case to our docket under the authority granted by K.S.A. 20-3018(c).

We note that SRS is appealing from both the denial of its motion to dismiss and its motion for summary judgment while KDHE only challenges the denial of its motion for summary judgment. Although the district court and the parties have raised several issues, we find the issue of the existence of a duty dispositive of all issues.

### Scope of Review

The scope of review on a motion for summary judgment includes any "pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits." *Hollenbeck v. Household Bank*, 250 Kan. 747, 750, 829 P.2d 903 (1992). The important distinction between the handling of a motion to dismiss on the one hand and a motion for summary judgment on the other is that in the former the trial court is limited to a review of the pleadings, while in the latter, the trial court takes into consideration all of the facts disclosed during the discovery process—affidavits, depositions, admissions, and answers to interrogatories. *Beck v. Kansas Adult Authority*, 241 Kan. 13, 26, 735 P.2d 222 (1987). Under the circumstances, we are only required to address the propriety of the district court's decision on the agencies' motions for summary judgment.

### Standard of Review

This court, as does the trial court, must resolve all facts and

inferences which may be reasonably drawn from the evidence in favor of the party opposing the summary judgment motion, and if reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. The party opposing summary judgment has the affirmative duty to come forward with facts to support its claim, although the party is not required to prove its case. *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 306-07, 756 P.2d 416 (1988). Summary judgment is only appropriate if the record conclusively shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *C.J.W. v. State*, 253 Kan. 1, 16, 853 P.2d 4 (1993).

*Uncontroverted or Admitted Facts*

A.W. and R.W. were children enrolled at the Munchkin Care Center, a day care center located in Topeka. The plaintiffs alleged a number of violations and abuses by the owner-operators of the day care center and alleged that KDHE and SRS were negligent in failing to revoke or suspend the license of the day care providers or take other corrective actions. KDHE is the state agency statutorily vested with the power to license and regulate day care centers in this state. SRS is the state agency that, in conjunction with law enforcement officers, has the duty to receive and investigate reports of child abuse for the purpose of determining whether a report is valid and whether state action is required to protect a child from further abuse. SRS at no time had legal or physical custody of A.W. and R.W. SRS did investigate and determine the reports of abuse filed by the plaintiffs. SRS had no contractual or business relationship with the day care center or the center's employees.

SRS, by statute, is required to investigate any report of child abuse. From December 1986 to March 1988, SRS investigated four claims of child abuse at the day care center. The claims all involved the same adult. In June 1987, SRS investigated but could not confirm a report that this adult may have "fondled" a child at the day care center. SRS did recommend that the adult "modify his behavior." Two other incidents of inappropriate touching by the adult were made in 1987 by two different parents, but those

parents subsequently refused to cooperate with SRS's investigation of the reports. In 1988, SRS received a report that a child at the day care center had possible bruising around his anus, but a physician determined that no abuse was involved. Plaintiffs' expert witness agreed the SRS investigations were properly conducted.

KDHE, by statute, is responsible for the licensing and inspection of day care centers. It has the authority to suspend or revoke a day care center's license. KDHE investigated 30 complaints it received about the day care center during the years from 1985 to 1989. The problems reported included repeated instances of overenrollment, inadequate supervision of the children, and inappropriate disciplinary methods. Plaintiffs' expert opined that KDHE acted unreasonably in failing to correct the problems or to close down the day care center operation. Plaintiffs argued, however, that although their expert witness agreed the four unconfirmed reports of abuse were not sufficient to require corrective action or a license revocation by KDHE, the number and frequency of problems involving overenrollment and improper disciplinary methods, when coupled with the unconfirmed reports of abuse, should have resulted in suspension or revocation of the day care center's license.

Other facts were asserted by SRS and controverted by the plaintiffs, but the plaintiffs failed to cite to the record to support their disagreement with the facts stated. It is incumbent on a party opposing a motion for summary judgment to counter alleged uncontroverted facts with something of evidentiary value. *Glenn v. Fleming*, 247 Kan. 296, 305, 799 P.2d 79 (1990). Courts have discretion to treat a fact as uncontroverted when the party controverting the alleged uncontroverted fact fails to cite any factual authority for support. *Danes v. St. David's Episcopal Church*, 242 Kan. 822, 830, 752 P.2d 653 (1988). Under the circumstances, the additional uncontroverted facts are: (1) SRS had no "knowledge, contact or relationship" with the plaintiffs at the time of the alleged abuse "other than as members of the public at large"; (2) KDHE, when exercising its discretion, determined it did not have any sufficient reason under K.S.A. 65-516 and K.S.A. 65-

521 to revoke the day care center's license; and (3) SRS had no ongoing regulatory responsibility for the day care center employees at the time the plaintiffs were customers of the center.

### The District Court's Decision

The district court ruled SRS and KDHE had a duty to warn or protect the plaintiffs under *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986), which involved § 324A of the Restatement (Second) of Torts (1964), and *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984), which involved §§ 315 and 324A of the Restatement (Second) of Torts. The court also found K.S.A. 38-1524 imposed a statutory duty on SRS to protect the plaintiffs. The court then found KDHE and SRS had a duty to protect the welfare of children under the doctrine of parens patriae. The district court also ruled KDHE had a duty because it had a special relationship with the plaintiffs through its statutory duty to regulate day care centers, *i.e.*, to license, receive and investigate complaints, supervise, and monitor day care centers. The district court found there were genuine issues of material fact and the agencies were not entitled to judgment as a matter of law.

The Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, provides that, unless a statutory exception applies, a "governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 75-6103(a). Negligence consists of the following elements: a duty owed to the plaintiff, breach of that duty, that the breach of duty was the proximate cause of the plaintiff's injury, and that the plaintiff suffered damages. *Honeycutt v. City of Wichita*, 251 Kan. 451, 463, 836 P.2d 1128 (1992). The existence of a duty is a question of law. *Nero v. Kansas State University*, 253 Kan. 567, 571, 861 P.2d 768 (1993). Our review of questions of law is unlimited. *Dutta v. St. Francis Regional Med. Center, Inc.*, 254 Kan. 690, 693, 867 P.2d 1057 (1994). For either SRS or KDHE to be liable, there must have been a duty owed to the plaintiffs.

Restatement (Second) of Torts § 315

The existence of the duty under § 315 of the Restatement (Second) of Torts was recently analyzed in *Nero*. Nero, a student at Kansas State University, was sexually assaulted by another KSU student, Davenport. During the spring semester, after Davenport had been accused of raping another student, he was assigned to an all-male dormitory. During the spring intersession, only one dormitory, a co-ed dorm, was available to students. Nero and Davenport both were enrolled in the intersession and both were placed in the co-ed dorm.

In *Nero*, we noted that an actor has no duty to control the conduct of a third person to prevent that person from causing harm to others unless a special relationship exists between the actor and the third party or the actor and the injured party. 253 Kan. at 571 (citing § 315).

Comment c to § 315 explains:

" 'The relations between the actor and a third person which require the actor to control the third person's conduct are stated in §§ 316-319. The relations between the actor and the other which require the actor to control the conduct of third persons for the protection of the other are stated in §§ 314A and 320.' "

The special relationships set out in §§ 314A, 316-319, and 320 are those of common carriers and their passengers, innkeepers and their guests, parents and children, masters and servants, the possessors of land and licensees, persons in charge of one with dangerous propensities, and persons with custody of another. See *McGee v. Chalfant*, 248 Kan. 434, 438, 806 P.2d 980 (1991) (citing Restatement (Second) of Torts §§ 316-320).

We had previously discussed the concept of special relationship in *Robertson v. City of Topeka*, 231 Kan. 358, 644 P.2d 458 (1982). In *Robertson*, the plaintiff called Topeka police to remove Leroy Danner from a house Robertson owned. Robertson informed the police Danner had no right to be on the property and that if he was not removed he would probably burn the house down. The police refused to remove Danner and ordered Robertson to leave the premises. Within 15 minutes the house began to burn. We stated in Syl ¶ 2:

"In tort law, it is generally held that the duty of a law enforcement officer to preserve the peace is a duty owed to the public at large, not to a particular individual. Absent some special relationship with or specific duty owed an individual, liability will not lie for damages."

This court found no special relationship existed between Robertson and the police. 231 Kan. at 364.

In this case, KDHE and SRS, the plaintiffs, and the third party (the abuser) do not fit into the special relationships set out in the Restatement (Second) of Torts §§ 314A, 316-319, and 320. We have noted a special relationship may also exist when one creates a foreseeable peril, not readily discoverable, and fails to warn. *Robertson*, 231 Kan. at 364. SRS or KDHE, however, did not create the peril, which was the chance of abuse at the hands of the husband of the day care provider. A.W. and R.W. were also never in the legal or physical custody or care of SRS or KDHE. SRS and KDHE had no more contact with the plaintiffs than with any other member of the public at large. There was no special relationship between SRS or KDHE and the plaintiffs. Without a special relationship, there is no duty owed under § 315.

Restatement (Second) of Torts § 324A

Restatement (Second) of Torts § 324A provides that one who undertakes to render services either gratuitously or for consideration to another which should be recognized as necessary for the protection of a third person has a duty to act reasonably. See *Honeycutt*, 251 Kan. at 464. In that case, Honeycutt, a kindergartner, was walking home from school alone when he was struck and seriously injured by a train on railroad tracks that were between his school and his home. We noted that a school district is under no duty to supervise or provide for the protection of its pupils who are off of the school grounds and on their way home from school unless it has undertaken to provide transportation for them. 251 Kan. 451, Syl. ¶ 11. We rejected Honeycutt's claim that the school district acted affirmatively or entered into an agreement to protect him while he was en route between his home and his school. 251 Kan. at 468.

The threshold requirement for the application of § 324A is a showing that KDHE or SRS undertook, gratuitously or for con-

sideration, to render services to the plaintiffs. See 251 Kan. at 464. To deny summary judgment on this ground, there must be at least a genuine issue of fact as to whether KDHE or SRS, through affirmative acts, assumed an obligation or intended to render services for the benefit of the plaintiffs. In *Honeycutt*, 251 Kan. at 465, we quoted from *Gooch v. Bethel A.M.E. Church*, 246 Kan. 663, 668, 792 P.2d 993 (1990):

" 'In each of the Kansas cases imposing liability under § 324A, it was clear that [the threshold] requirement was met. In *Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585 (1982), KCPL agreed to and was hired to render traffic engineering services to the City. In *Ingram v. Howard-Needles-Tammen & Bergendoff*, 234 Kan. 289, 672 P.2d 1083 (1983), the Kansas Turnpike Authority hired Howard-Needles as its consulting engineers to make safety inspections of the turnpike and thus render services to the KTA. In *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984), there was evidence the county agreed with Kansas State Penitentiary officials and other law enforcement agencies to notify these agencies of escapes from the penitentiary. In *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986), the police were obligated by a general police department order to take certain incapacitated persons into custody. Further, in the cases not finding a duty, it was clear there was no undertaking. In *Hanna v. Heur, Johns, Neel, Rivers & Webb*, 233 Kan. 206, [662 P.2d 243 (1983),] the court found the defendant architects did not agree to be responsible for safety practices on the jobsite and took no actions indicating they assumed any such responsibility. In *Meyers v. Grubaugh*, 242 Kan. 716, 750 P.2d 1031 (1988), the State simply allowed the intoxicated employee to leave work. Thus, in all cases where it was found that the parties undertook to render services to another, they agreed to or were obligated to perform services for another that were accepted and thus the initial requirement of § 324A was met; and, in all cases where liability was not imposed, the defendants had no agreement and took no affirmative action that could be construed as an intentional undertaking to render services to another.' "

The plaintiffs have not come forward with any evidence to indicate KDHE and SRS have performed any affirmative acts towards these plaintiffs, nor have the plaintiffs demonstrated a question of fact exists as to whether KDHE or SRS entered into any agreement with these plaintiffs. Without an affirmative act or an agreement, there is no duty owed under § 324A.

Doctrine of Parens Patriae

The State has an interest in protecting the welfare of infants within its borders, and the State, as parens patriae, has the duty

to see that every child within its borders receives proper care and treatment. The power of the State to control the activities and conduct of children reaches beyond the scope of its authority over adults.

The power of the state, as parens patriae, is not an unlimited and arbitrary one, and is exercised only in cases where the child is destitute of that parental care and protection to which he is entitled. To effect such power the legislature may and should make reasonable regulations tending toward the protection and welfare of the child, and so important is this governmental function that the limitations of the constitution are to be so construed, if possible, as not to interfere with its legitimate exercise. Such legislation is beneficial and remedial, not criminal in its nature, and entitled to favorable and liberal construction. *State ex rel. O'Sullivan v. Heart Ministries, Inc.*, 227 Kan. 244, 253, 607 P.2d 1102 (1980).

The doctrine of parens patriae empowers, but does not impose a duty on, the State to act on behalf of the welfare of those unable to care for themselves. Neither KDHE or SRS owed a duty to the plaintiffs under the doctrine of parens patriae.

Statutory Duty

K.S.A. 38-1524, in part, provides that upon a report of abuse, SRS "*shall* make a preliminary inquiry to determine whether the interests of the child require further action be taken. . . . *If reasonable grounds to believe abuse or neglect exist,* immediate steps *shall* be taken to protect the health and welfare of the abused or neglected child *as well as that of any other child under the same care who may be harmed by abuse or neglect.*" (Emphasis added.)

This is a duty towards the public at large. Under the public duty doctrine, "a governmental entity is not liable for torts committed against a person in absence of a special duty owed to the injured party." *Fudge*, 239 Kan. at 372. A duty owed to the public may be narrowed into a special duty owed to an individual where the governmental entity has performed some affirmative act that causes injury or where it had made a specific promise or representation that under the circumstances creates a justifiable reliance on the part of the person injured. SRS neither acted af-

firmatively, caused the injury, or made any specific promise or representation to the plaintiffs which created any justifiable reliance. Under these circumstances, SRS's statutory duty was owed to the public at large and not specifically to the plaintiffs. See *Jamierson v. Dale*, 670 S.W.2d 195, 196 (Mo. App. 1984) (duty under day care licensing statutes and regulations is to public at large).

K.S.A. 65-521 gives KDHE the discretion to "deny, revoke or refuse to renew a certificate of registration upon a determination by the secretary that the registrant falsified information on the application or willfully and substantially has violated K.S.A. 65-516 to 65-522, inclusive, and amendments thereto." K.S.A. 65-523 allows KDHE to suspend any license, certificate of registration, or temporary permit issued under the provisions of K.S.A 65-501 to 65-522, inclusive, on grounds delineated in K.S.A. 65-523. K.S.A. 65-524 authorizes KDHE to suspend any license, certificate of registration, or temporary permit issued under the provisions of K.S.A. 65-501 to 65-522, inclusive, and amendments thereto, prior to any hearing when, in the opinion of the Secretary, the action is necessary to protect any child in the day care center from physical or mental abuse, abandonment, or any other substantial threat to health or safety. All of these statutes use discretionary language.

In *Fudge*, we found there was a special relationship in that case because the police department had adopted mandatory procedures to take intoxicated persons into custody who are likely to do physical injury to themselves or others if allowed to remain at liberty. We stated: "The police officers should have realized that taking [the bar patron] into protective custody was necessary for the protection of third persons. Their failure to do so significantly increased the risk that [the bar patron] would cause physical harm to others." 239 Kan. at 373. The crucial difference between guidelines that create a special duty and those that do not is that the former use mandatory language, *i.e.*, shall, must, or will, rather than discretionary words such as may, should, or can. See *Mills v. City of Overland Park*, 251 Kan. 434, 446-47, 837 P.2d 370 (1992). The statutes concerning KDHE, unlike the pol-

icy and procedures adopted in *Fudge,* use discretionary language. KDHE had no special relationship with the plaintiffs that would create a special duty.

Neither SRS nor KDHE owed any statutory duty to the plaintiffs.

The district court's denials of the motions for summary judgment are reversed. This matter is remanded to the district court with instructions to grant the agencies' motions for summary judgment.