(921 P.2d 216)
No. 74,811

NANCY CAROL BEEBE, STEVEN R. SUBLETT, Special Administrator of the Estate of ASHLEY NICOLE ROWELL, and NANCY CAROL BEEBE, Natural Guardian and Next Friend of KAREN LYNN ROWELL, and NANCY CAROL BEEBE, Natural Guardian and Next Friend of TREASA MARIE ROWELL, *Appellants*, v. REBECCA FRAKTMAN, ANN MAR-MASON, and DR. M. LUDLOW, M.D., *Appellees*.

Opinion filed May 24, 1996.

*Kiehl Rathbun*, of Wichita, for appellants.

*Donald A. Frigon*, of Frigon Law Firm, of Dodge City, for appellee Becky Fraktman.

*Michael George*, of Topeka, for appellee Ann Mar-Mason.

Before LEWIS, P.J., ELLIOTT, J., and CHARLES E. WORDEN, District Judge, assigned.

ELLIOTT, J.: Nancy Carol Beebe, mother of A.R., and Steven Sublett, special administrator of A.R.'s estate sued, alleging the Kansas Department of Social and Rehabilitation Services (SRS) workers Ann Mar-Mason and Rebecca Fraktman were negligent in their investigation of child abuse allegations involving A.R.'s father. As a result, they claim A.R. was killed by her father.

The trial court granted summary judgment in favor of defendants on the grounds defendants owed no legal duty to plaintiffs and that defendants were immune from liability under K.S.A. 75-6104(d) and (e) of the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*

Plaintiffs appeal and we affirm.

Wichita SRS received two reports of suspected abuse and neglect involving A.R. and her father. The first was by a telephone call from A.R.'s maternal grandmother and the grandmother's counselor. After reviewing the report, defendant Mar-Mason determined A.R. was at minimal risk and did not open a case for investigation.

Later, A.R.'s pediatrician contacted SRS regarding possible sexual abuse. The doctor reported A.R.'s father brought her in because of vaginal bleeding. While the doctor made the contact with SRS, the doctor did not find the vaginal bleeding to be conclusive evidence of sexual abuse. After reviewing this information, defendant Fraktman decided not to open a case for investigation.

A.R. died and her father was convicted of her murder; at the time of her death, A.R. was in the legal custody of her father and not SRS.

Plaintiffs first contend the trial court erred in ruling defendants had no legal duty to protect A.R. from abuse. In this regard, plaintiffs do cite to the pediatrician's deposition for his testimony that he spoke with an SRS worker who told him his report would be passed on to a supervisor who would follow up on the report. On the other hand, plaintiffs do not provide any citations to the record to support their claim that SRS workers promised A.R.'s grand-

mother an investigation would take place. Accordingly, we disregard this allegation in plaintiffs' brief. See Supreme Court Rule 6.02(d) (1995 Kan. Ct. R. Annot. 29).

Essentially, the Kansas Tort Claims Act provides that a governmental entity is liable for negligent acts where a private person would be liable under similar circumstances. See K.S.A. 75-6103(a). But to establish a negligence claim, a plaintiff must establish a duty, a breach of that duty, proximate cause, and resulting damages. *P.W. v. Kansas Dept. of SRS*, 255 Kan. 827, 831, 877 P.2d 430 (1994).

Plaintiffs rely solely on *P.W.* to support their argument defendants owed them a legal duty. But in *P.W.*, the court rejected all of plaintiffs' contentions. Only two need be mentioned here. First, the *P.W.* court examined § 324A of the Restatement (Second) of Torts (1964), and summarized Kansas case law thus:

" ' "[I]n all cases where it was found that the parties undertook to render services to another, they agreed to or were obligated to perform services for another that were accepted and thus the initial requirement of § 324A was met; and, in all cases where liability was not imposed, the defendants had no agreement or took no affirmative action that could be construed as an intentional undertaking to render services to another." ' " 255 Kan. at 834.

Second, the *P.W.* court considered whether SRS had a legal duty to plaintiffs under K.S.A. 38-1524. That statute provides in part:

"(b) Whenever any person furnishes information to [SRS] that a child appears to be a child in need of care, [SRS] shall make a preliminary inquiry to determine whether the interests of the child require further action be taken. . . . If reasonable grounds to believe abuse or neglect exist, immediate steps shall be taken to protect the health and welfare of the abused or neglected child as well as that of any other child under the same care who may be harmed by abuse or neglect."

The *P.W.* court held that K.S.A. 38-1524 creates a duty to the public at large. Under the public duty doctrine, a governmental entity is not liable for breach of a public duty, but only for breach of a special duty owed to an individual. 255 Kan. at 835.

In the present case, plaintiffs rely only on the Restatement (Second) of Torts portion of *P.W.*, claiming this case is distinguishable from *P.W.* because here, SRS did undertake to render services for the protection of A.R.

Our question, then, is whether taking information and assuring the report would be "followed up" constitutes an undertaking to render services sufficient to create a legal duty on the part of SRS. A related question is whether an alleged failure to exercise reasonable care in following up on the report increased the risk of harm to A.R.

By Monday morning quarterback standards, SRS might have *decreased* the risk to A.R. had it opened a file and actively investigated; however, we cannot state that SRS's failure to do so *increased* the risk of harm. A.R.'s father created the risk of harm, not SRS.

Another problem with plaintiffs' argument is that any "promise" by SRS to follow up is merely a promise to comply with the requirements of K.S.A. 38-1524. As discussed previously, the *P.W.* court held that statute creates only a public duty and not a special duty to an individual.

Next, we must decide if defendants are immune from liability under the Kansas Tort Claims Act, which is a question of law. See *Lamb v. City of Elsmore*, 18 Kan. App. 2d 641, 643, 857 P.2d 1380, *rev. denied* 253 Kan. 859 (1993). The trial court ruled defendants were immune under two different exceptions of the Kansas Tort Claims Act.

Plaintiffs argue the defendants are not eligible for the discretionary function exception. We disagree. The decision whether to open a file for further investigation is a discretionary function. In *G. v. State Dept. of SRS*, 251 Kan. 179, 833 P.2d 979 (1992), the Supreme Court found the SRS decision to remove a child from foster care to fall within the discretionary function exception. The *G.* court reasoned that in undertaking the function, state employees are called on to make delicate and complex judgments involving the weighing of risks. The court concluded these decisions rank high on the discretionary tree and should not be the subject of hindsight scrutiny. 251 Kan. at 192.

The trial court also found defendants immune under K.S.A. 75-6104(d), which was added to the Kansas Tort Claims Act in 1987. That exception provides:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(d) adoption or enforcement of, or failure to adopt or enforce, any written personnel policy which protects persons' health or safety unless a duty of care, independent of such policy, is owed to the specific individual injured, except that the finder of fact may consider the failure to comply with any written personnel policy in determining the question of negligence." K.S.A. 75-6104(d).

Plaintiffs do not address this portion of the trial court's ruling. The amendment was clearly intended to negate at least part of the holding of *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986). In any event, the SRS procedures manual states SRS "should" notify the reporter of abuse that SRS does not intend to open a file. This discretionary language does not create a special duty on the part of SRS. This case does not involve the failure to enforce mandatory guidelines.

Affirmed.