NOT DESIGNATED FOR PUBLICATION

No. 112,415

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEVEN T. WATTERS as Natural Father and
Representative of the Decedent
JAYLA MICHELLE HAAG WATTERS,
*Appellant*,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES
(f/k/a Department of Social and Rehabilitation Services),
*Appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM SIOUX WOOLLEY, judge. Opinion filed
December 23, 2015. Reversed and remanded.

*Randall K. Rathbun*, of Depew Gillen Rathbun & McInteer LC, of Wichita, for appellant.

*Steve R. Fabert*, assistant attorney general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., PIERRON and LEBEN, JJ.

LEBEN, J.: Steven Watters is the biological father of Jayla Haag (also referred to as
Jayla Haag Watters). Although Jayla was born with methamphetamine in her system, the
Kansas Department for Children and Families allowed Jayla's mother to retain legal
custody of Jayla. Jayla lived with her mother and her mother's boyfriend, who were both
heavy methamphetamine users. The Department investigated at least one report, in
October 2011, that Jayla was being abused. In March 2012, when she was 18 months old,

Jayla entered the hospital with bleeding in her brain, methamphetamine in her system, missing teeth, and bruises. She died 8 days later.

Watters' petition claims that the Department is responsible for Jayla's death because it failed to investigate reports of her abuse and failed to remove Jayla from her mother's custody. Generally, when it's investigating reports of child abuse, the Department has a responsibility to the public at large, not to particular people. But this case is before us on the Department's motion to dismiss, and Watters has not yet completed any discovery—that is, he hasn't had the chance to request information from other parties that may help him make his case. He argues that at the very least, he should be able to continue his case beyond the pleadings and through discovery. We agree. In this setting, we have to consider whether the facts and inferences in Watters' petition state a claim based on any possible theory of liability, and because we can't say with certainty that Watters' petition does not state a claim, we must reverse the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

Because this case was dismissed at the pleading stage, the underlying facts come only from Watters' first amended petition. When considering dismissal at the pleading stage, a court must accept these facts as true.

Watters is the biological father of Jayla, an 18-month-old child who died in March 2012. In July 2011, the Kansas Department for Children and Families (previously known as the Department of Social and Rehabilitation Services) won a lawsuit against Watters for child-support payments and reimbursement of Jayla's medical expenses. Following Jayla's death in March 2012, Watters brought a wrongful-death action against the Department, alleging that its employees were negligent in their investigations of reports that Jayla was being abused and failed to take actions that could have prevented Jayla's death.

2

According to Watters' petition, Alyssa Haag gave birth to Jayla in September 2010. Alyssa had used drugs during her pregnancy; Jayla tested positive for methamphetamines and amphetamines at birth. The petition states that the Department had previously removed a child from Alyssa's custody and determined that Alyssa could keep custody of Jayla only if Alyssa lived with her mother. But Alyssa did not live with her mother; instead she lived in an apartment with her boyfriend. During this time, Watters alleges that Alyssa denied him access to Jayla.

In June 2011, police raided Alyssa's apartment and found drugs; Alyssa's boyfriend was later convicted of possession with intent to sell a depressant. Watters alleges that the Department knew that Jayla was living in this drug-heavy environment and did nothing to remove her. Watters was unaware of Jayla's living conditions.

Watters alleges that on October 12, 2011, the Department contacted Alyssa based on an anonymous report that Jayla had facial bruising and burns on her fingers. Two days later, a Department social worker and police officer visited Alyssa's apartment and saw that Jayla had bruises on her face. Then, the petition reports, on March 21, 2012, a neighbor heard Jayla crying followed by what sounded like choking and gasping for air. Jayla began having seizures later that day and at some point was hospitalized.

At the hospital, Jayla tested positive for methamphetamines and amphetamines. She had bleeding in her brain and multiple bruises, and she was missing four teeth. Following Jayla's admission to the hospital, police officers executed a search warrant at Alyssa's apartment. They found drug paraphernalia, bloody baby clothing, and bloody adult clothing. Eight days later, Jayla died.

Watters' petition alleges that the Department owed Jayla a special duty because it was collecting support payments from Watters, that the Department negligently

investigated the reports of Jayla's abuse, and that the Department's child-abuse investigation was required, not optional. The Department moved to dismiss the case, arguing that it couldn't be liable because it owed no special duty to Jayla or her father beyond the usual relationship between a state welfare agency and the people it investigates and because it was immune from liability under the Kansas Tort Claims Act.

While the parties were waiting for a ruling on the Department's motion to dismiss, Watters' motions for discovery of evidence and the Department's motion for a protective order were pending and set for hearing on July 22, 2014. Two different judges were handling the case—one considering the motion to dismiss, another the motions regarding discovery. The judge assigned to hear the discovery motions had told the parties that he wanted a ruling on the motion to dismiss before he decided the discovery matters, since a dismissal would make the discovery motions moot. On the morning of July 21, 2014, the Department emailed the motion-to-dismiss judge asking for a ruling because the discovery hearing was set for the next day. Later that day, the district court granted the Department's motion and dismissed the case, finding that the Department owed no duty to Watters or his daughter. Watters has appealed to this court.

ANALYSIS

Watters argues that the district court shouldn't have dismissed his case because he wasn't able to complete discovery and because the facts he has alleged so far are sufficient to support his claim at this stage of the litigation. Whether a district court should have granted a motion to dismiss is a question of law, and we consider the issue anew without deference to the district court's decision. *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013). We consider the facts in the petition and all reasonable inferences that can be drawn from them to be true and view these facts and inferences in the light most favorable to Watters. 296 Kan. at 545-46, 549. If the facts and inferences

4

state any claim that could be made under the law, then the case shouldn't be dismissed. 296 Kan. at 546.

Under the rules in Kansas for filing a lawsuit (called "notice pleading"), the petition is not meant to govern the entire course of the case, *Rector v. Tatham*, 287 Kan. 230, 232, 195 P.3d 364 (2008), and a plaintiff doesn't have to list the specific statutes that apply to the case. *Families Against Corporate Takeover v. Mitchell*, 268 Kan. 803, 809, 1 P.3d 884 (2000). Notice pleading is meant to simplify the pleading process with the straightforward goal of informing the other side of "'the operative facts involved in the litigation.'" *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 232, 805 P.2d 1244 (citing *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 446-49, 681 P.2d 630 [1984]), *rev. denied* 248 Kan. 996 (1991). "The petition's principal purpose is notice, and the ultimate theory on which the modern lawsuit is tried is shaped by the facts which are unveiled through the discovery process." *Noel*, 15 Kan. App. 2d at 233. At the pleading stage, many facts have not yet been uncovered, so "[j]udicial skepticism must be exercised when the motion [to dismiss] is made before the completion of discovery." *Rector*, 287 Kan. at 232-33.

As a result, motions to dismiss are rarely granted—discovery is a necessary companion to notice-style pleading. *Families Against Corporate Takeover*, 268 Kan. at 809. "[D]ismissal of a petition . . . [on a motion to dismiss] prior to the utilization of discovery procedures is seldom warranted." *Noel*, 15 Kan. App. 2d at 233. Motions to dismiss "may be granted only in the clearest of cases and must be denied when additional facts obviously are required before an ultimate judgment may be formed." *Wrenn v. State*, 561 F. Supp. 1216, 1220 (D. Kan. 1983). In other words, any doubt or ambiguity about the claim must be resolved in favor of the plaintiff. *S.A.I., Inc. v. General Elec. Railcar Services*, 935 F. Supp. 1150, 1152 (D. Kan. 1996). However, if the facts and inferences taken from the petition simply cannot support the claim, dismissal can be appropriate. See *Estate of Beckner v. Jensen*, 29 Kan. App. 2d 129, 24 P.3d 169 (2001) (affirming a dismissal because the defendant owed no duty to the plaintiff).

5

Watters complains that because discovery would turn up further facts that support his claim that the Department owed a duty to him or his daughter and isn't immune from liability under the Kansas Tort Claims Act, the district court shouldn't have dismissed the case on the pleadings. As we will explain, when considering the petition's facts and inferences to be true and looking at them in the light most favorable to Watters, we cannot say with certainty that the Department owed no duty to Watters and his daughter. We likewise cannot say that the Department is definitely immune from liability. While it's possible that additional facts gleaned from discovery won't ultimately support Watters' arguments, Watters' petition has alleged sufficient facts at this point that he should be able to complete discovery. See *Braintree Laboratories, Inc. v. Nephro-Tech, Inc.*, 31 F. Supp. 2d 921, 924 (D. Kan. 1998) ("The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims.").

I. *Watters Has Alleged Sufficient Facts to Support His Claim That the Kansas Department for Children and Families Owed a Duty to Him or His Daughter.*

Watters argues that the district court shouldn't have dismissed his case because he has sufficiently alleged that the Department owed a duty to him or his daughter.

Here, Watters' ultimate complaint—that the Department failed to properly investigate the abuse of his daughter, resulting in her death—is a claim against a state agency. As such, the Department's potential liability comes from the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*: "[E]ach governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 2014 Supp. 75-6103(a).

6

A private person is liable if that person owes the plaintiff a duty of care and breaches that duty, causing the plaintiff damage. *P.W. v. Kansas Dept. of SRS*, 255 Kan. 827, 831, 877 P.2d 430 (1994). If a person has no duty, he or she cannot breach that duty and cannot be liable for negligence. *Burney v. Kansas Dept. of SRS*, 23 Kan. App. 2d 394, 397, 931 P.2d 26 (1997). So for the Department to be liable to Watters for the harm that came to Jayla, it must have owed a duty to Watters or his daughter. The existence of a duty is a question of law that we review without deference to the district court's conclusion. *P.W.*, 255 Kan. at 831.

In addition to the Kansas Tort Claims Act, the public-duty doctrine applies when a person sues a government agency for negligence. *Kirk v. City of Shawnee*, 27 Kan. App. 2d 946, 950, 10 P.3d 27, *rev. denied* 270 Kan. 898 (2000). This doctrine states that a government agency's statutory responsibilities create a duty owed to the public at large and not to specific individuals. 27 Kan. App. 2d at 950. So unless a government agency owes an individualized and special duty to the injured person, it generally won't be liable for negligently performing its statutory responsibilities. *Roe v. Kansas Dept. of SRS*, 278 Kan. 584, 592-93, 102 P.3d 396 (2004) (citing *P.W.*, 255 Kan. at 835); see also *Bieker v. State*, No. 110,984, 2015 WL 326625, at *3 (Kan. App. 2015) (unpublished opinion) (describing the public-duty doctrine generally), *rev. denied* 302 Kan. ___ (August 20, 2015).

Here, the Department's statutory responsibility under K.S.A. 2014 Supp. 38-2230 includes investigating reports of child abuse; those investigations create only a duty to the public at large, not to the specific people being investigated. See *Burney*, 23 Kan. App. 2d at 399. Any actions taken by the Department that are part of its statutory responsibility cannot, by definition, form the basis for finding an individualized and special duty owed to a particular person. See *Roe*, 278 Kan. at 594 (promise to monitor another agency's delivery of direct services to a child was part of the Department's statutory responsibility

7

and did not create a duty under Restatement [Second] of Torts § 324A [1965]); *P.W.*, 255 Kan. at 834 (investigation of child abuse at a daycare center was a statutory responsibility and not an affirmative act creating a duty to particular children under Restatement [Second] of Torts § 324A [1965]); *Beebe v. Fraktman*, 22 Kan. App. 2d 493, 496, 921 P.2d 216 (1996) (promise to follow up on a report of abuse was part of a statutory responsibility and didn't create a special duty).

Another way to look at the interaction of the Kansas Tort Claims Act and the public-duty doctrine is this: the Kansas Tort Claims Act says a government can be liable for torts in the same way that a private person can be liable for torts, see K.S.A. 2014 Supp. 75-6103, and a private person can't be liable for negligently performing a government responsibility. *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 33, 20 P.3d 39 (2001). So the Department's statutory responsibility can't be the basis for tort liability here—for the Department to be liable, it must have owed a special duty to Watters and his daughter that came from something other than its statutory responsibility owed to the public at large. See *P.W.*, 255 Kan. at 835 ("A duty owed to the public may be narrowed into a special duty owed to an individual . . . ."). Watters makes this exact argument: the Department "undertook action beyond its general statutory duty" and created a special duty owed to him and his daughter. Watters argues that four sections of the Restatement (Second) of Torts establish the special duty that the Department owed him and his daughter: § 321, § 324A, § 323, and § 315.

To determine whether Watters has alleged sufficient facts to support his claim that the Department undertook actions outside of its statutory responsibility, we first have to compare the Department's statutory responsibilities to the allegations in Watters' petition. K.S.A. 2014 Supp. 38-2230 sets forth the Department's responsibilities regarding child-abuse investigations:

"Whenever any person furnishes information to the secretary that a child appears to be a child in need of care, the department shall make a preliminary inquiry to determine whether the interests of the child require further action be taken. Whenever practicable, the inquiry shall include a preliminary investigation of the circumstances which were the subject of the information, including the home and environmental situation and the previous history of the child. If reasonable grounds to believe abuse or neglect exist, immediate steps shall be taken to protect the health and welfare of the abused or neglected child . . . . After the inquiry, if the secretary determines it is not otherwise possible to provide those services necessary to protect the interests of the child, the secretary shall recommend to the county or district attorney that a petition be filed."

Watters lists the facts that he believes demonstrate the extent of the Department's actions in providing services to Jayla and Alyssa: it collected child-support payments from Watters, it had previously removed a child from Alyssa, it knew that Jayla was born with drugs in her body, it was aware that police had found drugs in Jayla's home, it allowed Alyssa to retain custody only under special conditions, and it had received and investigated a report that Jayla was being abused.

Even if all these facts are true, it's unclear whether any of these situations fall outside the Department's statutory responsibility to investigate child abuse and are affirmative actions that create a duty owed to Jayla or Watters. Collecting child support doesn't create a special duty: it's just a way to reimburse the Department for the monetary support it provided to Alyssa for Jayla. See K.S.A. 2014 Supp. 39-709(c) (a person receiving state support assigns to the state any right to receive child support). And Watters cites no authority to suggest that collecting child support on behalf of a child makes an agency liable for harm to that child. The rest of these facts are connected to the Department's continued investigation of Jayla's living situation—as stated in the petition, they don't rise to the level of affirmative acts creating a special duty because they are simply what the Department does when it investigates abuse. However, from these allegations we could infer that the Department took some kind of affirmative action: the

9

Department had previously removed a child from Alyssa, it made special arrangements to allow Alyssa to keep Jayla but knew that Alyssa wasn't complying with those arrangements, and it knew Jayla was probably being abused but did not remove her. These facts don't make that showing on their own, but the question is whether Watters has alleged enough facts to support his claim and get to discovery, not to prove it on the merits at this point. See *Braintree Laboratories*, 31 F. Supp. 2d at 924.

Turning then to the Restatement (Second) of Torts, Watters first argues that § 321 applies—that section creates a duty based on an act that creates an unreasonable risk of harm:

> "(1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.

> "(2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk."

Kansas courts have only once applied this section, in a products-liability case discussing a manufacturer's duty to recall dangerous products that weren't known to be dangerous at the time of sale. See *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 749, 861 P.2d 1299 (1993). Kansas courts have discussed a similar proposition—that a special relationship may exist when a person creates some kind of hidden danger and fails to warn or prevent the harm—but have cited to § 315 instead of § 321. See *D.W. v. Bliss*, 279 Kan. 726, 734-35, 112 P.3d 232 (2005) (quoting *Nero v. Kansas State University*, 253 Kan. 567, 571-72, 861 P.2d 768 [1993]).

Watters cites a child-abuse case from West Virginia in which the court used § 321 to find a duty and urges us to adopt its reasoning. In *Courtney v. Courtney*, 186 W. Va. 597, 604-05, 413 S.E.2d 418 (1991), a father abused his wife and son, and the court

10

found that the grandmother might be liable for that abuse because she gave Valium to the father while knowing that he had violent tendencies when using that drug. The court analyzed § 321, determined that the grandmother had engaged in affirmative conduct (giving the drugs to the father) that created an unreasonable risk of harm to his wife and son, and stated that she "had a duty to act reasonably by not giving him alcohol and drugs." 186 W. Va. at 604-05.

Here, Watters reasons that the Department knew that Jayla was born with methamphetamine in her system; as a result, it required Alyssa to live with her mother to retain custody of Jayla. After the Department learned that Alyssa was living elsewhere, received a report of Jayla being abused, and visited Alyssa and saw bruising on Jayla's face, it should have realized that it had created an unjustifiable risk that Jayla would be harmed by allowing her to live with Alyssa, at which point a duty arose to prevent that harm. The district court distinguished *Courtney* by noting that there the grandmother acted affirmatively and created a foreseeable risk, whereas here the allegation is largely that the Department failed to act. While that could be true, we must construe the petition in the light most favorable to Watters, and the Department's decision to leave Jayla in Alyssa's custody could be seen as an affirmative act. Also, Kansas courts have not considered § 321 in this context before, and we are reluctant to dismiss a case on the pleadings when a new theory of liability is alleged—new legal theories should be explored in light of the actual facts rather than only what's been plead. See 5B Wright & Miller, Federal Practice and Procedure: Civil 3d § 1357 (2004). Watters has alleged sufficient facts to support his claim of a duty owed under § 321.

Second, Watters argues that the Department owed him a duty based on Restatement (Second) of Torts § 324A (1965):

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his

things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

> (a) his failure to exercise reasonable care increases the risk of such harm, or

> (b) he has undertaken to perform a duty owed by the other to the third person, or

> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

This section, by its terms, describes a situation involving three parties: (1) an actor who provides services; (2) "another" person who receives those services; and (3) a "third person" who is protected by those services. Restatement (Second) of Torts § 324A (1965). Here, the Department is the actor who allegedly provided or agreed to provide services. The services were provided to "another," Watters' daughter Jayla. But the "third person" protected by those services is also Jayla. Like the district court, we find that the triangle of liability described in § 324A doesn't fit the facts in this case. See also *P.W.*, 255 Kan. at 834 (a case with three parties—the Department, a daycare center, and the injured parties—and listing cases in which Kansas courts have imposed a § 324A duty, all of which involve three parties).

But third, Watters argues that § 323 applies here. Restatement (Second) of Torts § 323 (1965) is called "Negligent Performance of Undertaking to Render Services" and mirrors § 324A, except that it involves only two parties:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

> (a) his failure to exercise such care increases the risk of such harm, or

> (b) the harm is suffered because of the other's reliance upon the undertaking."

The two parties here are the actor who provides services and the other who receives the services necessary for his or her own protection. Compare Restatement (Second) of Torts

12

§ 323 (1965) with Restatement (Second) of Torts § 324A (1965). So this section could fit the facts here in a way that § 324A did not if the Department took affirmative action to provide services to Jayla for Jayla's own protection.

Watters didn't raise this section in the district court, and generally, an issue not raised below can't be heard on appeal, but if it involves only a question of law arising on proved or admitted facts that is finally determinative of the case, we can consider it. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1178 (2009). While the facts here are not proved or admitted, we must take them as such because we are deciding a motion to dismiss. If we find that § 323 applies, it would be finally determinative of this case because the Department would owe a duty and the case shouldn't have been dismissed. See *Burney*, 23 Kan. App. 2d at 398 (considering for the first time on appeal whether the Department owed a duty to an alleged child abuser). More importantly, when considering a motion to dismiss, we have to consider whether Watters can state a claim under any legal theory at all. *Families Against Corporate Takeover*, 268 Kan. at 809.

Both § 323 and § 324A require an affirmative act by the Department. In *Roe*, the Kansas Supreme Court considered whether there was an affirmative act to establish a duty under § 324A. There, the Department had agreed to monitor the Bureau of Indian Services, which provided direct services to baby Roe. 278 Kan. at 587, 594. The Department was the actor, providing services to "another," the Bureau of Indian Services, for the protection of a third person, baby Roe. 278 Kan. at 587. The court, in a 4-3 decision, reversed the Court of Appeals and found that the Department's agreement to monitor didn't impose a duty because it was just part of the agency's statutory responsibility to the public at large. 278 Kan. at 594; but see 278 Kan. at 596 (Luckert, J., dissenting) (agreeing with the Court of Appeals that the promise to monitor was outside of the Department's statutory responsibility and was an independent action sufficient to impose a duty to the injured child under § 324A).

13

So the minimum requirement for liability under § 324A or § 323 would be a showing that the Department provided services to Watters, Alyssa, or his daughter in the form of affirmative acts outside of the Department's statutory responsibilities. See *Roe*, 278 Kan. at 594; *P.W.*, 255 Kan. at 833-34. Using § 324A, Watters alleges that the Department (the actor), made an agreement with Jayla's mother (the other), not to remove Jayla (the third person in need of protection) if Alyssa would live with her mother. See Restatement (Second) of Torts § 324A (1965). Using § 323, Watters alleges that the Department (the actor), provided services to Jayla (the other) that were necessary for Jayla's protection. See Restatement (Second) of Torts §323 (1965). As we've noted, it's possible that the Department took some affirmative actions that could have created a duty—the Department had previously taken a child from Alyssa's custody and knew that Jayla was born with drugs in her system. It allowed Alyssa to retain custody of Jayla only under certain circumstances but then did nothing even though it knew that Alyssa wasn't abiding by those conditions. Watters has plead sufficient facts to support his claim, at this stage, that the Department owed a duty under § 323 or § 324A.

Fourth, Watters argues that Restatement (Second) of Torts § 315 (1965) creates a duty owed by the Department to Watters and his daughter. This section sets forth a general principle about the duty to control the conduct of others:

> "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>> (b) a special relation exists between the actor and the other which gives to the other a right to protection." Restatement (Second) of Torts § 315 (1965).

The special relations between the actor and the third person appear in §§ 316-19, and the special relations between the actor and the other appear in § 314A and § 320.

14

Restatement (Second) of Torts § 315, comment c (1965); *P.W.*, 255 Kan. at 832. Of these sections, the parties in this case mentioned § 314A, § 316, and § 320 in their motions and at the hearing. However, Watters doesn't mention any of these sections on appeal; his brief covers only § 315 generally. As such, we find that Watters waived his argument for application of § 314A, § 316, and § 320. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). But because of the standard of review for a motion to dismiss (to review the pleaded facts to see if they state a claim on *any* possible theory), see *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 231, 805 P.2d 1244, *rev. denied* 248 Kan. 996 (1991), we will briefly mention why none of the special relationships described in these sections (which are the basis for imposing a duty) apply here.

Restatement (Second) of Torts § 314A (1965) identifies four kinds of special relationships that create exceptions to the general rule that an actor has no duty to help another person: common carriers, innkeepers, landowners, and custodians owe a duty to aid their passengers, guests, invitees, and people in custody. See also Restatement (Second) of Torts § 314 (1965) (general no-duty rule). None of those relationships exist here. Restatement (Second) of Torts § 316 (1965) states the duty of parents to control their children's conduct—but here the Department was not acting as a parent to prevent a child from harming someone (the child was the one being harmed). Lastly, Restatement (Second) of Torts § 320 (1965) states the duty of a person with custody of another, but the Department didn't have custody of Jayla; Alyssa did. None of these special relationships apply here, so Restatement (Second) of Torts § 315 (1965) doesn't create a duty in this context. See *P.W.*, 255 Kan. at 833 (ending the § 315 inquiry and finding no duty because the relationship didn't fit into § 314A, §§ 316-19, or § 320); *Burney*, 23 Kan. App. 2d at 399 (ending the inquiry and finding no duty under § 315 because the relationship didn't fit into § 314, § 316, or § 320).

The court stated in *P.W.* that a statutory responsibility owed to the public "may be narrowed into a special duty owed to an individual where the governmental entity has

15

performed some affirmative act that causes injury or where it had made a specific promise or representation that under the circumstances creates a justifiable reliance on the part of the person injured." 255 Kan. at 835; see also *Roe*, 278 Kan. at 595 (Luckert, J., dissenting) ("SRS might be liable if it did undertake an affirmative act toward a plaintiff other than the performance of a statutory duty or discretionary function."). All the cases examining the Department's liability for harm to abused children were at least at the summary-judgment stage—none were dismissed on the pleadings. See *Roe*, 278 Kan. at 585; *Bolyard v. Kansas Dept. of SRS*, 259 Kan. 447, 448, 455, 912 P.2d 729 (1996); *P.W.*, 255 Kan. at 828; *Kennedy v. Kansas Dept. of SRS*, 26 Kan. App. 2d 98, 99, 981 P.2d 266, *rev. denied* 267 Kan. 889 (1999); *Burney*, 23 Kan. App. 2d at 395; *Beebe*, 22 Kan. App. 2d at 494. We must exercise judicial skepticism at this point—we cannot say with certainty that Watters' petition fails to state a claim. See *Rector*, 287 Kan. at 232. It's possible that additional discovery into the Department's records will show nothing more than a regular child-abuse investigation undertaken pursuant to statutory responsibility— but Watters has alleged enough facts in his petition that he should be allowed to find out.

Finally, and briefly, the Department argues that if the district court shouldn't have dismissed the case before discovery, Watters invited that mistake by either requesting or allowing the court to rule on the motion to dismiss before the discovery motions were decided. "Where counsel for one party causes or invites a particular ruling, such party cannot later argue that such ruling was erroneous." *Gilliland v. Kansas Soya Products Co.*, 189 Kan. 446, 451-52, 370 P.2d 78 (1962). But here, Watters didn't cause or invite a *particular* ruling because while the motion to dismiss and the discovery motions were both pending, the motion to dismiss could have been granted or denied. When Watters complied with the discovery judge's request to postpone the discovery hearing until after the motion-to-dismiss ruling, he did not ask the motion-to-dismiss judge for a *particular* ruling, he just asked for *a* ruling. Complying with a judge's reasonable request to conserve judicial resources (since granting the motion to dismiss would make the discovery motions moot) is not inviting error.

16

II. *Watters Has Alleged Sufficient Facts to Support His Claim That the Kansas Department for Children and Families Is Not Immune from Liability Under the Kansas Tort Claims Act.*

The Department argues that even if we find that it owed a duty, it is immune from liability under (1) the discretionary-function exception of the Kansas Tort Claims Act, (2) the law-enforcement exception to that act, and (3) the immunity provision of the child-abuse-reporting statute. Under the Kansas Tort Claims Act, liability is the rule and immunity is the exception, and the Department bears the burden of demonstrating immunity on the merits. *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 232-33, 262 P.3d 336 (2011). Immunity is a question of law that we consider anew, without any deference to the district court's decision. See *Beebe*, 22 Kan. App. 2d at 496.

First, the discretionary-function exception to liability under the Kansas Tort Claims Act provides immunity from "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 2014 Supp. 75-6104(e). To determine whether an action is discretionary, "'Kansas courts look . . . to the nature and quality of the discretion exercised.'" *Thomas*, 293 Kan. at 234 (quoting *Soto v. City of Bonner Springs*, 291 Kan. 73, 79, 238 P.3d 278 [2010]). Discretionary acts tend to involve more policy-making and require some kind of expertise. 293 Kan. at 234. On the other hand, ministerial decisions are those that require very little expertise or decision-making. 293 Kan. at 235 (an example of ministerial work is cleaning up vomit).

Kansas courts have previously held that various aspects of the Department's child-abuse investigations fall within the discretionary-function exception. In *G. v. State Dept. of SRS*, 251 Kan. 179, 191, 833 P.2d 979 (1992), the court held that the Department's removal of a child from a foster home was within the discretionary-function exception. In

17

*Bolyard*, the court ruled that the Department was entitled to immunity under the discretionary-function exception for its decision to temporarily place children with their mother. 259 Kan. at 451. Then, in *Beebe*, the court held that the decision to open a file to investigate a child-abuse report was a discretionary function. 22 Kan. App. 2d at 496. Finally, in *Burney*, the court held that the manner of investigating a report of child abuse was a discretionary function. 23 Kan. App. 2d at 402-03; accord *Kennedy*, 26 Kan. App. 2d at 102; see also *Schmidt v. HTG, Inc.*, 265 Kan. 372, 393, 961 P.2d 677 (1998) (citing *Beebe* and *Burney* approvingly), *cert. denied* 525 U.S. 964 (1998).

This caselaw establishes that the discretionary-function exception generally just tracks with the agency's statutory responsibilities to investigate child abuse—whether framed as a question of duty or immunity, the Department isn't liable for doing what it's required to do by statute. The discretionary-function exception does apply here, but only to the extent that the Department's actions were within its statutory responsibilities: *Burney* held specifically that "the manner of conducting an investigation into a charge of child abuse" is a discretionary function. 23 Kan. App. 2d at 402-03. The Department's decisions during child-abuse investigations involve managing complex and delicate factors and balancing different risks—these are the type of discretionary decisions designed to be exempt from liability under the Kansas Tort Claims Act. *Bolyard*, 259 Kan. at 454-55; *Beebe*, 22 Kan. App. 2d at 496. However, if the Department took actions outside of its statutory responsibility, as Watters alleges, the Department would not be entitled to immunity under the discretionary-function exception for those actions because they are not part of the discretionary governmental functions protected by the statute.

Watters claims in his brief that "Kansas law is plain that the execution of a discretionary function must be carried out in a non-negligent manner." This overstates the court's finding in *Nero* that a state agency can be liable for negligence in carrying out a *ministerial* act to further a *discretionary* decision. 253 Kan. 567, Syl. ¶ 13. This statement simply affirms the notion that ministerial acts don't fall within the discretionary-function

18

exception. *E.g.*, *Allen v. Kansas Dept. of SRS*, 240 Kan. 620, Syl. ¶ 1, 731 P.2d 314 (1987) (decision to mop a hallway was discretionary, but actual mopping was ministerial and could be done negligently). Watters claims that the decision to investigate Jayla's abuse was then negligently carried out. But a child-abuse investigation as a whole requires a series of discretionary decisions; it is more than just deciding to investigate and then investigating. See K.S.A. 2014 Supp. 38-2230. The investigation itself involves discretion in a way that mopping a floor does not. However, again, if the Department took action outside its statutory responsibility, that action could create liability that would make the Department no longer immune.

Second, the Department states that it is immune under the law-enforcement exception to the Kansas Tort Claims Act, which grants immunity from claims of "enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, rule and regulation, ordinance or resolution." K.S.A. 2014 Supp. 75-6104(c). But because the Department doesn't cite any cases to support this argument, we consider it waived. Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 40); *State v. Williams*, 298 Kan. 1075, 1083-84, 319 P.3d 528 (2014) ("When a litigant fails to adequately brief an issue it is deemed abandoned.").

Third, the Department argues that it is immune under a provision of the child-abuse reporting statute, K.S.A. 2014 Supp. 38-2223(f):

> "Anyone who, without malice, participates in the making of a report to the secretary or a law enforcement agency relating to a suspicion a child may be a child in need of care or who participates in any activity or investigation relating to the report or who participates in any judicial proceeding resulting from the report shall have immunity from any civil liability that might otherwise be incurred or imposed."

The district court held that this provision didn't apply to the facts of this case for two reasons. First, "anyone" is not defined, but it is a broad enough term to cover the

19

Department's employees, as we found in *Kennedy*. 26 Kan. App. 2d at 103 (finding the individual defendants immune under the precursor to this statute, K.S.A. 38-1526). However, it's not clear that "anyone" is broad enough to cover the Department itself, the only defendant in this case. Second, the statute immunizes anyone who reports *to* either the Department or law enforcement. K.S.A. 2014 Supp. 38-2223(f). It would be illogical for the Department to report to itself, so the only potential immunity available to the Department under this statute would be for reports that it made to law enforcement. There's been no allegation here that the Department reported to law enforcement. So the immunity offered by this statute doesn't apply to the facts of this case.

Because we have to consider whether the facts and inferences in Watters' petition state a claim based on any possible theory of liability, and because we can't say with certainty that Watters' petition does not state a claim or that the Department is immune from liability, we must reverse the district court's judgment, which dismissed Watters' petition for failure to state a claim.

The case is remanded to the district court for further proceedings consistent with this opinion.

* * *

PIERRON, J.: I respectfully dissent. When a child like Jayla is the victim of abuse leading to her death the natural responses are anger and a desire to see that justice is done. Since child protective services are usually not funded well enough to prevent many of these outrages, retribution often seems to be the only available response. Criminal penalties have their place as well as appropriate civil actions. However, the legal responses available under our civil law in cases like this involve complex issues of public policy that may appear to block what might seem to be what should be done.

20

Although the theory of sovereign immunity, which posited that the King (government) cannot be the subject of a civil action for negligence by individuals claiming damage therefrom, has been replaced for the most part by statutory provisions, there still remain provisions protecting governmental actors from suits for negligence. Our courts have been faced with the issue of when the State can be held liable for apparently negligent acts many times.

The cases which I believe are the most useful in analyzing the instant case are *Roe v. Kansas Dept. of SRS*, 278 Kan. 584, 102 P.3d 396 (2004); *P.W. v. Kansas Dept. of SRS* 255 Kan. 827, 877 P.2d 430 (1994); *Burney v. Kansas Dept. of SRS*, 23 Kan. App. 2d 394, 931 P. 2d 26 (1997); and *Beebe v. Fraktman*, 22 Kan. App. 2d 493, 921 P. 2d 216 (1996). The majority opinion contains the facts necessary to analyze the instant case and most of the important legal citations. This dissent will focus on contrary analysis supported by the above mentioned precedent.

Baby Roe was born to parents who lived in a residential mental health treatment facility. Because staff at the facility were concerned about the parents' ability to care for the baby, the Kansas Department of Social and Rehabilitation Services (SRS) and the Bureau of Indian Affairs became involved. Baby Roe subsequently suffered severe and permanent injuries at the hands of his father despite ongoing monitoring of his family situation by SRS. Baby Roe, his adoptive parents, and his conservator sued SRS, the State, and individual case workers in tort. The district court granted summary judgment in favor of the defendants and the plaintiffs appealed.

The *Roe* court, citing *P.W.*, *Beebe*, and *Burney*, reversed the reversal of the district court by the Court of Appeals and reinstated the district court's dismissal. *Roe*, 278 Kan. at 595. The court addressed § 324A of the Restatement (Second) of Torts and the Kansas Tort Claims Act. 278 Kan. at 590-595.

The *Roe* court specifically stated: "Under the public duty doctrine, a governmental entity is not liable for torts committed against a person in the absence of a special duty owed to the injured party." 278 Kan. 584, Syl. ¶ 3. "Providing services to protect the welfare of potentially abused or neglected children is a public duty which is not owed to an individual child." 278 Kan. 584, Syl. ¶ 4.

Looking at the contentions of fact by the plaintiffs there are no asserted facts which, even if proved, would establish a special duty as defined by the Supreme Court. The majority seems to take the position that the plaintiffs should be allowed to fish for facts which might establish a special duty notwithstanding that they have no factual contentions that would establish a special duty.

To recapitulate, in tort law, it is generally held that the duty of a State law enforcement officer to preserve the peace, or other State actors such as child protective service workers to protect children from abuse or neglect, are duties owed to the public at large, not to a particular individual. Absent some special relationship with or specific duty owed an individual, liability will not lie for damages. There is no particular special relationship asserted by the plaintiffs in this case. See *Roe*, 278 Kan. at 593; *P.W.*, 255 Kan. 2d at 833; *Burney*, 23 Kan. App. 2d at 398; *Beebe*, 22 Kan. App 2d at 495.

We also note the *P.W.* court mentioned the Restatement (Second) of Torts §§ 314A, 316-319 and 320 and 315 when analyzing the reach of any special relationships. 255 Kan. at 833. This would establish that the court considered these provisions and found they did not change the result. It does not appear that any of these aforementioned provisions would provide a cause of action here.

The trial court's ruling should be affirmed.